PEOPLE v ACEVAL

Docket No. 279017. Submitted January 7, 2009, at Detroit. Decided
    February 5, 2009, at 9:10 a.m. Leave to appeal sought.

    The Wayne Circuit Court, Vera Massey-Jones, J., accepted Alexander
        Aceval's plea of guilty to a charge of possession with intent to
        deliver 1,000 or more grams of cocaine. The defendant filed a
        delayed application for leave to appeal. The Court of Appeals,
        HOEKSTRA, P.J., and SAWYER and MARKEY, JJ., denied the application
        in an unpublished order, entered October 5, 2007 (Docket No.
        279017). The Supreme Court, in lieu of granting leave to appeal,
        remanded the case to the Court of Appeals for consideration, as on
        leave granted, of whether the defendant was denied the right to
        counsel of his choice under *United States v Gonzalez-Lopez*, 548
        US 140 (2006), and whether the prosecution's acquiescence in the
        presentation of perjured testimony, during the defendant's first
        trial before Mary Waterstone, J., that resulted in a mistrial when
        the jury was unable to reach a verdict, amounts to misconduct that
        deprived the defendant of due process to such an extent that a
        retrial should be barred. 480 Mich 1108 (2008).

        The Court of Appeals *held*:

        1. The defendant was not denied his right to choice of counsel
    under the circumstances of this case. Although the trial court
    disallowed the limited appearance of an attorney who sought to
    participate in the case solely with respect to certain pretrial
    motions by the defendant, the defendant was represented by a
    second counsel of his choice who was fully involved in the
    litigation. The trial court did not prevent the excluded attorney
    from filing a full appearance and acting as cocounsel, and its
    decision was based on concerns regarding retrying the defendant
    in a timely manner. The defendant failed to show plain error
    affecting his substantial rights with regard to this unpreserved
    issue.

        2. A retrial was not barred under the circumstances of this
    case. The remedy when a defendant receives an unfair trial
    because of prosecutorial misconduct is a new and, presumably, fair
    trial. The remedy flows from the type of harm that the defendant
    has suffered. It does not follow that a due process violation should

bar a retrial because such a remedy would be unduly broad and would fail to address the specific harm that the defendant has suffered. The complained-of misconduct that occurred in the first trial did not prejudice the defendant because he received a new trial, the remedy that was appropriate.

3. The disgraceful conduct by the trial judge in the first trial and by the prosecutor in that first trial of knowingly allowing perjured testimony denied the defendant due process. The misconduct, however, does not itself warrant a bar to a retrial because the first trial ended in a mistrial because of a hung jury and the misconduct did not prejudice the defendant, who received the appropriate remedy of a new trial.

Affirmed.

MURPHY, P.J., concurring, wrote separately to set forth analysis and reasoning with respect to footnote 5 of the majority opinion and to state his view regarding why it is critical to include the footnote. He additionally wrote to note that, to the extent that the majority opinion builds a wall separating due process analysis from double jeopardy analysis or compartmentalizes the two concepts so that the two never meet, he disagreed because the right to due process includes, in part, immunity from double jeopardy. Without the footnote, the opinion would shut the door on a double jeopardy remedy that would bar retrial on any and all due process challenges, no matter how egregious the violation arising from prosecutorial misconduct. Considering that a retrial is barred under the Double Jeopardy Clause when it is determined that there was insufficient evidence to sustain a conviction, there is logic to permitting that same remedy when a prosecutor is faced with proper evidence that the prosecutor deems is insufficient to secure a conviction, but nonetheless proceeds with the trial, intentionally relying on perjured testimony in order to avoid what is believed to be a likely acquittal. In such circumstances, had legally sound evidence alone been presented that was insufficient to sustain a conviction, a retrial would not be allowed. There is no indication in this case that the prosecutor committed the misconduct for the purpose of avoiding or preventing an acquittal, nor can it be said that an acquittal was likely to occur if the prosecutor refrained from this misconduct or that the prosecutor believed that that was the case.

1. CRIMINAL LAW — ASSISTANCE OF COUNSEL — COUNSEL OF CHOICE.

Trial courts are given wide latitude in balancing a defendant's right to counsel of choice against the needs of fairness and the demands of the court's calendar; a balancing of the defendant's right to

counsel of his or her choice and the public's interest in the prompt and efficient administration of justice is performed to determine whether the defendant's right has been violated.

2. CRIMINAL LAW — DUE PROCESS — PROSECUTORIAL MISCONDUCT.

   A new trial is the appropriate remedy when a defendant receives an unfair trial because of prosecutorial misconduct; barring a retrial should not be a remedy for such a due process violation because that remedy would be unduly broad and fail to address the specific harm that the defendant has suffered.

3. ATTORNEY AND CLIENT — JUDGES — RULES OF PROFESSIONAL CONDUCT — CODE OF JUDICIAL CONDUCT — VIOLATIONS OF PROFESSIONAL AND JUDICIAL CONDUCT RULES.

   Neither the Michigan Rules of Professional Conduct nor the Code of Judicial Conduct confers upon a criminal defendant a constitutional right or remedy for an attorney's or a judge's violation of either set of rules.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jeffrey Caminsky*, Principal Attorney, Appeals, for the people.

*Law Offices of David L. Moffitt & Associates* (by *David L. Moffitt*) for the defendant.

Before: MURPHY, P.J., and K. F. KELLY and DONOFRIO, JJ.

K. F. KELLY, J. Defendant pleaded guilty of possession with intent to deliver 1,000 or more grams of cocaine, MCL 333.7401(2)(a)(*i*), and was sentenced to 10 to 15 years' imprisonment. Defendant then filed a delayed application for leave to appeal, which this Court denied[1] and, subsequently, he sought leave to appeal in our

---

[1] *People v Aceval*, unpublished order of the Court of Appeals, entered October 5, 2007 (Docket No. 279017).

Supreme Court. In lieu of granting leave to appeal, the Supreme Court remanded the case to this Court

> for consideration . . . of whether the defendant was denied the right to counsel of his choice under *United States v Gonzalez-Lopez*, 548 US 140 [126 S Ct 2557; 165 L Ed 2d 409] (2006), and for consideration of whether the prosecution's acquiescence in the presentation of perjured testimony amounts to misconduct that deprived the defendant of due process such that retrial should be barred. [*People v Aceval*, 480 Mich 1108 (2008).]

We now consider these issues on remand[2] and affirm.

### I. FACTS AND PROCEDURAL HISTORY

This matter arises out of an illegal drug transaction. On March 11, 2005, police officers Robert McArthur, Scott Rechtzigel, and others, acting on information obtained from Chad William Povish, a confidential informant (CI), were on surveillance at J Dubs bar in Riverview, Michigan. Povish previously told police officers that defendant had offered him $5,000 to transport narcotics from Detroit to Chicago. That day, the officers observed defendant, Povish, and Bryan Hill enter the bar. Defendant arrived in his own vehicle, while Povish and Hill arrived in another. Eventually the three individuals left the bar and loaded two black duffel bags into the trunk of Povish's car. Povish and Hill then drove away, while defendant drove away in his own vehicle. Subsequently, the officers stopped both vehicles and found packages of cocaine in the duffel bags located

---

[2] In his brief on appeal, defendant asserts issues not articulated in the Supreme Court's remand order. Because these issues are unpreserved and because the Supreme Court specifically denied leave to appeal in all other respects, *People v Aceval*, 480 Mich 1108 (2008), these additional issues are not properly before this Court and we do not consider them. See *People v Frazier*, 478 Mich 231, 241; 733 NW2d 713 (2007) (noting review of unpreserved issues is not favored).

in the trunk of Povish's car. Defendant was subsequently arrested and charged with possession with intent to deliver 1,000 or more grams of cocaine, MCL 333.7401(2)(a)(i), and conspiracy to commit that offense, MCL 750.157a.

Before trial, defendant moved for the production of the identity of the CI. During an evidentiary hearing on June 17, 2005, defendant requested that the trial court, Judge Mary Waterstone, conduct an in camera interview of McArthur, the officer in charge of the investigation. The judge agreed, and in the conference it was revealed that McArthur and Rechtzigel knew that Povish was the CI. Further, the officer told the trial court that Povish was paid $100 for his services, plus "he was going to get ten percent, whatever we got." The conference was sealed and the trial court denied defendant's motion.

Subsequently, defendant filed a motion to suppress certain evidence. During a hearing on September 6, 2005, Rechtzigel lied when he testified, in response to defense counsel's questioning, that he had never had any contact with Povish before March 11, 2005. The prosecutor did not object. On September 8, 2005, in another sealed in camera conference between the judge and the prosecutor, the prosecutor admitted that she knew that Rechtzigel had knowingly committed perjury but stated that she "let the perjury happen" because "I thought an objection would telegraph who the CI is." In response, the judge stated that she thought "it was appropriate for [the witness] to do that." Further, the court added, "I think the CI is in grave danger . . . . I'm very concerned about his identity being found out."

The matter went to trial on September 12, 2005. At trial, the prosecutor and the judge continued their

efforts to protect the CI's identity. Povish testified that he had never met Rechtzigel or McArthur before they stopped his vehicle on the day that he received the duffel bags and that neither had offered him a deal of any kind. He further testified that did not know what was in the duffel bags and that, until trial, he believed that he could be charged with a crime for his role in the incident. The prosecutor made no objection to this testimony. The prosecutor and the judge again indicated, in another sealed ex parte bench conference on September 19, 2005, that they knew Povish had perjured himself in order to conceal his identity. At the close of the trial, the jury was unable to reach a verdict and, thus, the trial court declared a mistrial.

On December 7, 2005, attorney Warren E. Harris filed an appearance to represent defendant in his re-trial, again in Judge Waterstone's court. On March 6, 2006, attorney David L. Moffitt petitioned for leave to file a limited appearance solely for purposes of filing certain motions by defendant, which the trial court granted on March 17, 2006. Subsequently, at a hearing on March 28, 2006, defendant indicated that he had become aware that the CI was Povish and argued that the case should be dismissed because of the trial court's and the prosecutor's complicit misconduct in permitting perjured testimony. Defendant also requested that both the prosecuting attorney and Judge Waterstone disqualify themselves from the case. Judge Waterstone disqualified herself on the record. The following day, Judge Vera Massey-Jones, the successor judge, entered an order unsealing the three in camera interviews.

Twelve days before defendant's second trial, Harris moved to withdraw because of a breakdown in the attorney-client relationship that he attributed to Moffitt's increased involvement. After finding that Moffitt's

appearance was only a limited appearance, the trial court, noting that it "can't deal with lawyers who aren't in the case all the way[,]" disallowed Moffitt from participating in the case and did not permit Harris to withdraw. The trial court stated, "And there's no way in the world I'm going to let you have a new trial lawyer come in here and mess up." Further, the trial court indicated that the matter was set for trial on a "particular date, and it's going to go to trial that date[,]" and that there was "no way I'm going to let" you "ruin my trial docket."

Defendant's retrial began on June 1, 2006, with Harris acting as counsel. Before trial, defendant allegedly contacted a prosecution witnesses and directed him to provide false testimony in support of the defense. After the prosecution discovered this information, it informed the trial court and defense counsel. Subsequently, the witness testified that defendant had asked him to lie and he purged his testimony. Thereafter, defendant pleaded guilty to the charge of possession with intent to distribute more than 1,000 grams of cocaine.

## II. RIGHT TO COUNSEL

We first address whether defendant was denied the right to counsel of his choice under *Gonzalez-Lopez*, *supra*. Defendant did not preserve this argument by asserting it in the trial court. Because this issue is, at a minimum, unpreserved,[3] our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

---

[3] By pleading guilty, defendant waived appellate review of this issue. "[A] plea of guilty waives all nonjurisdictional defects in the proceedings." *People v New*, 427 Mich 482, 488; 398 NW2d 358 (1986) (quotation marks and citation omitted). Nevertheless, we will address this issue pursuant to our Supreme Court's order.

Both the United States and Michigan constitutions provide that the accused shall have the right to counsel for his defense. US Const, Am VI; Const 1963, art 1, § 20. A defendant's right under the Michigan Constitution is the same as that guaranteed by the Sixth Amendment. *People v Reichenbach*, 459 Mich 109, 118; 587 NW2d 1 (1998). This guaranteed right encompasses a defendant's right to effective assistance of counsel, *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the right to self-representation, *Faretta v California*, 422 US 806, 818; 95 S Ct 2525; 45 L Ed 2d 562 (1975), the right of indigent defendants to have appointed counsel in felony prosecutions, *Gideon v Wainwright*, 372 US 335, 344; 83 S Ct 792; 9 L Ed 2d 799 (1963), and the right to choice of counsel, *Powell v Alabama*, 287 US 45, 53; 53 S Ct 55; 77 L Ed 158 (1932), which is at issue in this case.

The United States Supreme Court recently expounded upon a defendant's right to choice of counsel in *Gonzalez-Lopez, supra*. The Court stated, "[The Sixth Amendment] commands . . . that the accused be defended by the counsel he believes to be best." *Gonzalez-Lopez, supra* at 146. The Court continued, "Deprivation of the right is 'complete' when the defendant is *erroneously* prevented from being represented by the lawyer he wants . . . ." *Id.* at 148 (emphasis added). It is not necessary that a defendant show prejudice; it is enough that a defendant merely show that a deprivation occurred. *Id.* at 150. However, this right to choice of counsel is limited and may not extend to a defendant under certain circumstances. *Id.* at 151; *Wheat v United States*, 486 US 153, 164; 108 S Ct 1692; 100 L Ed 2d 140 (1988). As the *Gonzalez-Lopez* Court stated:

> [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them. See *Wheat*, 486 U.S., at 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140; *Caplin & Drysdale [v United States]*, 491 U.S. [617], at

624, 626, 109 S. Ct. 2646, 109 S. Ct. 2667, 105 L. Ed. 2d 528
[1989]. Nor may a defendant insist on representation by a
person who is not a member of the bar, or demand that a
court honor his waiver of conflict-free representation. See
*Wheat*, 486 U.S., at 159-160, 108 S. Ct. 1692, 100 L. Ed. 2d
140. We have recognized a trial court's wide latitude in
balancing the right to counsel of choice against the needs of
fairness, *id.*, at 163-164, 108 S. Ct. 1692, 100 L. Ed. 2d 140,
and against the demands of its calendar, *Morris v. Slappy*,
461 U.S. 1, 11-12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983).
[*Gonzalez-Lopez, supra* at 151-152.]

Similarly, this Court has opined that "[a] balancing of
the accused's right to counsel of his choice and the
public's interest in the prompt and efficient adminis-
tration of justice is done in order to determine whether
an accused's right to choose counsel has been violated."
*People v Krysztopaniec*, 170 Mich App 588, 598; 429
NW2d 828 (1988).

In the present matter, defendant was represented by
not one, but *two*, attorneys of his choice. Before the case
was transferred to Judge Massey-Jones, Judge Water-
stone permitted Moffitt to file a limited appearance and
participate in the case solely with respect to certain
pretrial motions, while Harris, who was already part of
the case, handled matters pertaining to defendant's
retrial. Just 12 days before trial, Harris moved to
withdraw because of a disagreement between the two
counsel regarding proper trial strategy and a resulting
breakdown in the attorney-client relationship between
Harris and defendant. At the hearing on Harris's mo-
tion, Judge Massey-Jones disallowed Moffitt's limited
appearance and denied Harris's motion to withdraw.
Defendant did not object to proceeding to trial with
Harris.

Given these facts, it is our view that defendant was
not denied his right to choice of counsel. While Judge

Massey-Jones denied defendant a second "limited-attorney" of defendant's choosing, defendant was not denied counsel of his choice, Harris, who was fully involved in the litigation. Moreover, the trial court did not indicate that defendant could not have a cocounsel. Rather, the trial court's statement that it would not "deal with lawyers who aren't in the case all the way" would have permitted Moffitt to file a full appearance and to act as cocounsel had defendant wished Moffitt to do so. Moffitt, however, did not file an appearance and was unwilling or unable to undertake the complete defense of defendant's case. Significantly, defendant did not object to the continued representation by Harris. In short, defendant exercised his right to counsel of choice by proceeding to trial with Harris, who was willing and able to do so.

In addition, our review of the record indicates that Judge Massey-Jones's decision to deny Harris's motion to withdraw 12 days before trial was based primarily on retrying defendant in a timely manner. At one point, Judge Massey-Jones stated, "[T]here's no way in the world I'm going to let you have a new trial lawyer come in here and mess up[,]" and, further, indicated that substituting a new attorney would "ruin [the court's] trial docket." Here, the demands of the trial court's calendar clearly outweighed defendant's right to choice of counsel when defendant maintained the first and primary attorney of his choosing, despite the fact that limited counsel was ejected from the case just 12 days before trial. *Morris, supra* at 11-12; *Krysztopaniec, supra* at 598. Under these circumstances, we cannot conclude that defendant was denied his Sixth Amendment right to counsel when the trial court did not permit Moffitt's limited appearance. Defendant has failed to show plain error affecting his substantial rights. *Carines, supra* at 763-764.

### III. DUE PROCESS

We next address whether the prosecutor's acquiescence in the presentation of perjured testimony at defendant's first trial constituted misconduct that deprived defendant of due process to the extent that retrial should have been barred. This issue presents a question of constitutional law that we review de novo. *People v Dunbar*, 463 Mich 606, 615; 625 NW2d 1 (2001).[4]

It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. *Mooney v Holohan*, 294 US 103, 112; 55 S Ct 340; 79 L Ed 791 (1935); *Pyle v Kansas*, 317 US 213, 216; 63 S Ct 177; 87 L Ed 214 (1942); *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). If a conviction is obtained through the knowing use of perjured testimony, it "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v Agurs*, 427 US 97, 103; 96 S Ct 2392; 49 L Ed 2d 342 (1976); see also *Giglio v United States*, 405 US 150, 154-155; 92 S Ct 763; 31 L Ed 2d 104 (1972); *Napue, supra* at 269-272. Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment. *Smith v Phillips*, 455 US 209, 219; 102 S Ct 940; 71 L Ed 2d 78 (1982); *Giglio, supra* at 154-155; *People v Cassell*, 63

---

[4] We note that defendant's guilty plea did not waive appellate review of this issue. Our Supreme Court in *New, supra*, recognized that a guilty plea does not waive defenses based on the Due Process Clause. The Court stated, "Wherever it is found that the result of the right asserted would be to prevent the trial from taking place, we follow the lead of the United States Supreme Court and hold a guilty plea does not waive that right." *New, supra* at 489 (quotation marks and citation omitted).

Mich App 226, 227-229; 234 NW2d 460 (1975). Thus, it is the "misconduct's effect on the trial, not the blameworthiness of the prosecutor, [which] is the crucial inquiry for due process purposes." *Phillips*, *supra* at 220 n 10. The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. *Id.* at 219.

While it is plain that a new trial is the remedy for a conviction obtained through misconduct that materially affected the trial's outcome, our Supreme Court has asked us to consider whether, under the circumstances of this case, a different remedy—a bar to retrial—is warranted. We conclude that it is not.

The purpose behind the Double Jeopardy Clause informs the reason for our answer, because our decision is based on the particular type of harm that a bar to retrial is intended to address. In instances where retrial is barred, that remedy stems from a violation of the Double Jeopardy Clause. US Const, Am V; Const 1963, art 1, § 15. The constitutional prohibition against double jeopardy bars retrial, or a second prosecution, after acquittal or conviction and protects against multiple punishments for the same offense. *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007). The purpose of the Double Jeopardy Clause is to "protect a person from being twice placed in jeopardy for the 'same offense' [and] . . . to prevent the state from making repeated attempts at convicting an individual for an alleged crime." *People v Torres*, 452 Mich 43, 63; 549 NW2d 540 (1996) (citations omitted). Thus, the remedy arising from a double jeopardy violation—a bar to retrial—is specifically tailored to the nature of the harm that the Double Jeopardy Clause is intended to prevent —the "embarrassment, expense and ordeal . . . [of living] in a continuing state of anxiety and insecurity"

that arises from being twice placed in jeopardy. *Id.* at 64 (quotation marks and citation omitted).

Having understood the proper purpose of a remedy barring retrial, the unsuitability of that remedy in the context of a due process violation becomes evident. In contrast to the prohibition against double jeopardy, a criminal defendant's right to a fair trial derives from the Due Process Clause of the Fourteenth Amendment. US Const, Am XIV; Const 1963, art 1, § 17. It goes without saying that it is not necessary to conduct a double jeopardy inquiry to establish a due process violation. As noted, the crux of the due process analysis in cases of alleged prosecutorial misconduct is whether the defendant received a fair trial. *Phillips, supra* at 220 n 10. The remedy when a defendant receives an unfair trial because of prosecutorial misconduct is a new and, presumably, fair trial. *Cassell, supra* at 227-229; *Agurs, supra* at 103; *Napue, supra* at 269-272. This remedy naturally flows from the type of harm that the defendant has suffered. It does not follow that a due process violation should bar retrial, because such a remedy would be unduly broad and would fail to address the specific harm the defendant has suffered. Specifically, barring retrial on the basis of due process grounds would amount to "punishment of society for [the] misdeeds of a prosecutor" because it would permit the accused to go free. *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Further, our Supreme Court has noted, "[T]he protections of substantive due process [do not] require recognition of a remedy for the harm incident to one or more mistrials [unless it also places a defendant in double jeopardy]." *People v Sierb*, 456 Mich 519, 525; 581 NW2d 219 (1998).[5]

---

[5] This is not to suggest however, that prosecutorial misconduct can never invoke the constitutional protection against double jeopardy. On

Nor do we find, as defendant urges, that the court's and the prosecutor's disgraceful conduct itself should warrant a bar to retrial. Assuming that the acts of the trial judge and the prosecutor in this case violated Michigan's Rules of Professional Conduct, MRPC 3.4, and Code of Judicial Conduct, Canon 3, and were clearly opprobrious, the remedy for their wrongs is accomplished in other forums, such as the Attorney Discipline Board and the Judicial Tenure Commission. *People v Green*, 405 Mich 273, 292-295; 274 NW2d 448 (1979). These codes, however, do not confer upon a defendant any type of constitutional right or remedy. *Id.* at 293. Rather, the particular constitutional right determines the constitutional remedy and these codes play no part in such decisions. *Id.* at 293-294. For these reasons, we do not take the opportunity here to create a new remedy for a due process violation arising out of prosecutorial and judicial misconduct.

Turning to the present matter, we find that defendant was denied due process because of the trial court's and the prosecutor's misconduct. However, here we stress that defendant was *not* convicted following his first trial; rather, the trial court declared a mistrial because of a hung jury.[6] This was clearly the appropriate remedy. Although both the trial court's and the prosecutor's conduct was plainly reprehensible, the blameworthiness of either is not the critical factor, because

that issue, we offer no opinion because, as Judge MURPHY notes in his concurrence, "there is no indication whatsoever that the prosecutor committed the misconduct for the purpose of avoiding or preventing an acquittal, nor can it be said that an acquittal was likely to occur if the prosecutor refrained from the misconduct or that the prosecutor believed such was the case." *Post* at 409.

[6] Here, the prohibition against double jeopardy did not prevent defendant's retrial. Retrial after a mistrial is not barred if the mistrial was the result of "manifest necessity," such as a hung jury, as was the case here. *People v Lett*, 466 Mich 206, 217-218; 644 NW2d 743 (2002).

the primary inquiry is the misconduct's effect on the
trial. *Phillips, supra* at 220 n 10; *Cassell, supra* at
227-229. In this case, the complained-of misconduct did
not prejudice defendant because he received the remedy
that was due him: a new trial. For these reasons,
defendant's constitutional due process claim must fail.

Affirmed.

DONOFRIO, J., concurred.

MURPHY, P.J. (*concurring*). I concur in the majority
opinion affirming defendant's conviction. I write sepa-
rately to set forth some analysis and reasoning with
respect to footnote 5 of the majority opinion and to voice
my view regarding why it is critical to include the footnote
in the opinion. I additionally write to note that, to the
extent that the majority opinion builds a wall separating
due process analysis from double jeopardy analysis or
compartmentalizes the two concepts so that the two never
meet, I disagree because the right to due process includes,
in part, immunity from double jeopardy.

Footnote 5 of the majority opinion is found in the
discussion regarding the issue, as framed by our Su-
preme Court, "of whether the prosecution's acquies-
cence in the presentation of perjured testimony
amounts to misconduct that deprived the defendant of
due process such that retrial should be barred." *People
v Aceval*, 480 Mich 1108 (2008). Without the footnote,
the opinion would effectively shut the door on a double
jeopardy remedy that would bar retrial on any and all
due process challenges, no matter how egregious the
violation, arising from prosecutorial misconduct. The
majority concludes that the granting of a new trial in
this case would have been the proper remedy for the
due process violation predicated on prosecutorial mis-

conduct; therefore, because the first trial resulted in a mistrial, given the hung jury, and because a new trial was scheduled, defendant already effectively received the remedy available to him for prosecutorial misconduct. Limited to the facts of this case, I can agree with that ruling. I can, however, conceive of situations, the present case excepted, in which a due process violation involving prosecutorial misconduct is so egregious and prejudicial that retrial should be barred. Indeed, in the context of some mistrials not involving a deadlocked jury, retrial is barred under existing Michigan and federal precedent.

The Fourteenth Amendment of the United States Constitution provides that no state in our union can "deprive any person of life, liberty, or property, without due process of law . . . ."[1] The Fifth Amendment affords individuals protection against double jeopardy with respect to criminal prosecutions pursued by the federal government. US Const, Am V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"). The Double Jeopardy Clause of the Fifth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *Albright v Oliver*, 510 US 266, 273; 114 S Ct 807; 127 L Ed 2d 114 (1994); *Benton v Maryland*, 395 US 784, 794; 89 S Ct 2056; 23 L Ed 2d 707 (1969) ("we today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment"); *People v Wilson*, 454 Mich 421, 427; 563 NW2d 44 (1997); *People v Ford*, 262 Mich App 443, 447; 687 NW2d 119 (2004). "A citizen's right to due process in state court, guaranteed by the

---

[1] At its core, "[d]ue process requires fundamental fairness . . . ." *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993).

Fourteenth Amendment to the United States Constitution, includes the immunity from double jeopardy guaranteed by the Fifth Amendment." *Ex parte Thomas*, 828 So 2d 952, 954 (Ala, 2001). In *People v Sierb*, 456 Mich 519, 525 n 13; 581 NW2d 219 (1998), our Supreme Court noted that ordering the retrial of a defendant "is not a violation of due process unless it also places the defendant in double jeopardy." Thus, it can be stated that, with respect to state prosecutions, an attribute of the right to due process under the United States Constitution includes the protection against double jeopardy.

Further, prosecutorial misconduct consisting of the knowing use of false evidence or perjured testimony violates a defendant's due process rights guaranteed by the Fourteenth Amendment. *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959); *Mooney v Holohan*, 294 US 103, 112; 55 S Ct 340; 79 L Ed 791 (1935). Our Supreme Court has even stated that "[i]t is inconsistent with due process when the prosecutor, although not having solicited false testimony from a state witness, allows it to stand uncorrected when it appears, even when the false testimony goes only to the credibility of the witness." *People v Wiese*, 425 Mich 448, 453-454; 389 NW2d 866 (1986). The United States Supreme Court in *Mooney, supra* at 112-113, observed:

> [The due process] requirement, in safeguarding the liberty of the citizen against deprivation through the action of the State, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions. It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such

a contrivance by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation. And the action of prosecuting officers on behalf of the State, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. That amendment governs any action of a State, whether through its legislature, through its courts, or through its executive or administrative officers. [Citation and quotation marks omitted.]

In *United States v Agurs*, 427 US 97, 103; 96 S Ct 2392; 49 L Ed 2d 342 (1976), the Supreme Court stated that it had "consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." The principle that the perjured testimony must affect the jury verdict, i.e., prejudice, was further explored in *Smith v Phillips*, 455 US 209, 219; 102 S Ct 940; 71 L Ed 2d 78 (1982), wherein the Court reasoned:

Past decisions of this Court demonstrate that the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. In *Brady v. Maryland*, 373 U.S. 83 [83 S Ct 1194; 10 L Ed 2d 215] (1963), for example, the prosecutor failed to disclose an admission by a participant in the murder which corroborated the defendant's version of the crime. The Court held that a prosecutor's suppression of requested evidence "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Applying this standard, the Court found the undisclosed admission to be relevant to punishment and thus ordered that the defendant be resentenced. Since the admission was not material to guilt, however, the Court concluded that the trial itself complied with the require-

ments of due process despite the prosecutor's wrongful
suppression. The Court thus recognized that the aim of due
process "is not punishment of society for the misdeeds of
the prosecutor but avoidance of an unfair trial to the
accused." [Citations omitted.]

On the strength of the authorities recited above, it is
evident that prosecutorial misconduct in the form of
knowing use of perjured testimony can violate due
process, demand the setting aside of a verdict, and
require a new trial to be conducted when prejudice was
incurred. This leaves the issue whether there exist
situations where the granting of a new trial is not a
sufficient remedy for the constitutional deprivation,
and where double jeopardy protections should be in-
voked. Generally speaking, the constitutional protec-
tion against double jeopardy does not preclude the
retrial of a defendant who successfully had a conviction
reversed on appeal. *United States v Ball*, 163 US 662,
671-672; 16 S Ct 1192; 41 L Ed 300 (1896); *People v
Watson*, 245 Mich App 572, 599; 629 NW2d 411 (2001).
In *People v Langley*, 187 Mich App 147, 150; 466 NW2d
724 (1991), this Court stated that "[i]t is well estab-
lished that the Double Jeopardy Clause does not pre-
clude the retrial of a defendant whose conviction is set
aside because of any error in the proceedings leading to
conviction other than the insufficiency of the evidence
to support the verdict." This principle begs the question
whether retrial should be permitted if a prosecutor
knowingly used perjured testimony, without which
there would have been insufficient evidence to secure a
conviction, with the intent to avoid a likely acquittal. I
shall return to that thought later in this concurrence.

In the context of a mistrial, double jeopardy is not a
bar to a second trial or retrial if there was a "manifest
necessity" for declaring the mistrial, and the classic
example of a situation in which there exists a manifest

necessity is a mistrial declared after a jury has indicated that it was unable to reach a verdict. *Oregon v Kennedy*, 456 US 667, 672; 102 S Ct 2083; 72 L Ed 2d 416 (1982); *People v Lett*, 466 Mich 206, 215-217; 644 NW2d 743 (2002) (mistrial premised on a hung jury is the classic basis for a proper mistrial and is occasioned by manifest necessity, and a retrial following a jury deadlock does not violate double jeopardy protections under the state and federal constitutions). In the case of a mistrial declared at the behest of a defendant, the " 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause." *Kennedy, supra* at 672; see also *Lett, supra* at 215. There is a narrow exception to this rule that arises when the prosecutor acts in a manner intended to goad a defendant into moving for a mistrial, in which case the defendant may raise the bar of double jeopardy to preclude a second prosecution after having proceeded in aborting the first trial on his or her own motion in response to the prosecutor's conduct. *Kennedy, supra* at 673-679; *Lett, supra* at 215. This is an example of prosecutorial misconduct that mandates the double jeopardy remedy of barring retrial.

Here, we are addressing a classic example of a mistrial declared because of manifest necessity, i.e., a deadlocked or hung jury, and the prosecution did not attempt to goad defendant into moving for a mistrial during the proceedings. But the part of the equation that exists here and which is not generally found with mistrials declared because the jury was unable to reach a verdict is the presence of the prosecutor's knowingly presenting perjured testimony.[2] And it would be improper to hold that in all instances under such circum-

---

[2] I would also note that the admission of the perjured testimony was with the full knowledge of the trial court. This is not an instance in which the prosecutor alone can be accused of misconduct.

stances the most a defendant can obtain as a remedy is
a new trial. This returns me to the question I posed
earlier, which is whether retrial should be permitted if
a prosecutor knowingly used perjured testimony, with-
out which there would have been insufficient evidence
to secure a conviction, with the intent to avoid a likely
acquittal. I tend to believe that the language in the
Supreme Court remand order suggests that there might
be occasions on which retrial would be barred.[3] Some
courts across the country have grappled with the issue.

In *United States v Wallach*, 979 F2d 912, 915-916 (CA
2, 1992), the United States Court of Appeals for the
Second Circuit engaged in the following extensive and
insightful discussion regarding the issue whether
double jeopardy protection bars retrial because of pros-
ecutorial misconduct arising out of the use of perjured
testimony:[4]

> Both sides recognize that a defendant who secures a
> reversal of his conviction because of a defect in the pro-
> ceedings leading to conviction normally obtains from the
> Double Jeopardy Clause no insulation against retrial. The
> principal exception is a reversal for insufficiency of the
> evidence. Both sides also recognize that a further exception

---

[3] As indicated above, our Supreme Court directed us to answer the
question "whether the prosecution's acquiescence in the presentation of
perjured testimony amount[ed] to misconduct that deprived the defen-
dant of due process such that retrial should be barred." *Aceval*, *supra* at
1108.

[4] In *Wallach*, the defendant had been convicted of various offenses, and
after the trial it was discovered that one of the witnesses had given
perjured testimony. The witness was later indicted and convicted of
perjury, and the Second Circuit reversed the defendant's conviction on
the basis that the federal prosecutor should have known that the witness
was providing perjured testimony. On remand for a new trial, the
defendant moved to dismiss the case, arguing that double jeopardy barred
retrial, and the district court denied the motion. The case then proceeded,
once again, to the Second Circuit for resolution of the double jeopardy
issue. *Wallach*, *supra* at 913-914.

arises in some circumstances involving misconduct by a prosecutor, but they differ sharply on the scope of that further exception. Their differences arise from disagreement as to the teaching of [*Kennedy, supra*].

*Kennedy* concerned a state court criminal trial that ended when a defendant's motion for a mistrial was granted. The defendant sought the mistrial after the prosecutor had asked a witness a prejudicially improper question. The trial court then denied a motion to preclude retrial on double jeopardy grounds, after finding that the prosecutor had not intended to precipitate the mistrial. The state appellate court reversed, concluding that retrial was barred, regardless of the prosecutor's intent, simply because the prosecutor's misconduct constituted "overreaching."

Reviewing this ruling, the Supreme Court acknowledged that its prior decisions had created some ambiguity as to the standard to be applied in assessing a prosecutor's misconduct for purposes of determining whether, under the Double Jeopardy Clause, a mistrial precipitated by such misconduct precluded a retrial. Resolving the ambiguity, the Court rejected the idea that misconduct alone barred a retrial and ruled instead that the circumstances in which the Clause would bar a retrial "are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."

The Government reads *Kennedy* as limited to its context of a criminal trial that ends with the granting of a defendant's motion for a mistrial. In the Government's view, *Kennedy* affords Wallach no benefit because he did not even move for a mistrial, much less obtain one; indeed, the trial ended, not with a mistrial, but with a conviction. On the other hand, Wallach reads *Kennedy* without the limitation of the mistrial context and extracts from it a rule of more general application: "The Supreme Court's rationale is that the Double Jeopardy Clause bars a second prosecution when the prosecutor engages in serious misconduct with the intention of preventing an acquittal."

We have some doubt that the Supreme Court expected its carefully worded statement of the rule in *Kennedy* to be extended beyond the context of a trial that ends with the granting of a defendant's motion for a mistrial. . . . The decision proceeds from the premise that "the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.' " Obviously a defendant, like Wallach, whose trial ends with a conviction has suffered no impairment of that valued right.

Yet there is force to Wallach's argument for some sort of extension. Since *Kennedy* bars a retrial on jeopardy grounds where the prosecutor engages in misconduct for the purpose of goading the defendant into making a successful mistrial motion that denies the defendant the opportunity to win an acquittal, the Supreme Court might think that the Double Jeopardy Clause protects a defendant from retrial in some other circumstances where prosecutorial misconduct is undertaken with the intention of denying the defendant an opportunity to win an acquittal.

But an extension of *Kennedy* beyond the mistrial context cannot be as broad as the rule for which Wallach contends. Every action of a prosecutor in the course of a trial is taken "with the intention of preventing an acquittal." . . . If the rationale of *Kennedy* were as broad as claimed by Wallach, the Double Jeopardy Clause would bar retrial of every defendant whose conviction is reversed because of intentional misconduct on the part of a prosecutor. For example, knowing use of perjured testimony that "could have affected the judgment of the jury" would result not only in reversal of a conviction, but also in a bar to retrial on jeopardy grounds. The Supreme Court could not possibly have mandated that result in *Kennedy*. Such a result would obliterate the precise distinction drawn in *Kennedy* between misconduct that merely results in a mistrial and misconduct undertaken for the specific purpose of provoking a mistrial. Only the latter circumstance creates a bar to retrial.

If any extension of *Kennedy* beyond the mistrial context is warranted, it would be a bar to retrial only where the

misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct. If jeopardy bars a retrial where a prosecutor commits an act of misconduct with the intention of provoking a mistrial motion by the defendant, there is a plausible argument that the same result should obtain where he does so with the intent to avoid an acquittal he then believes is likely. The prosecutor who acts with the intention of goading the defendant into making a mistrial motion presumably does so because he believes that completion of the trial will likely result in an acquittal. That aspect of the *Kennedy* rationale suggests precluding retrial where a prosecutor apprehends an acquittal and, instead of provoking a mistrial, avoids the acquittal by an act of deliberate misconduct. Indeed, if *Kennedy* is not extended to this limited degree, a prosecutor apprehending an acquittal encounters the jeopardy bar to retrial when he engages in misconduct of sufficient visibility to precipitate a mistrial motion, but not when he fends off the anticipated acquittal by misconduct of which the defendant is unaware until after the verdict. There is no justification for that distinction. [Citations omitted.]

The *Wallach* court concluded that the defendant could not avail himself under the principles stated in the quoted passage where the record reflected that the prosecution did not apprehend an acquittal, that the evidence of guilt was quite strong, and that the "prosecution had every reason to anticipate a conviction." *Wallach, supra* at 916.

In *United States v Catton*, 130 F3d 805 (CA 7, 1997), the United States Court of Appeals for the Seventh Circuit had previously reversed the defendant's conviction because of various trial errors and had remanded the case for a new trial. Following remand, the defendant moved to dismiss, claiming that a retrial would violate the Double Jeopardy Clause of the Fifth Amendment. The defendant argued that the prosecutor sub-

orned perjury and concealed exculpatory evidence, all in an effort to stave off a certain acquittal. *Id.* at 806. The *Catton* court stated:

There is an argument for a further extension of *Kennedy* that would bring Catton's case within the range of the double jeopardy clause. Confined to cases in which the defendant is goaded into moving for a mistrial, whether the motion is granted or denied, *Kennedy* would leave a prosecutor with an unimpaired incentive to commit an error that would not be discovered until after the trial and hence could not provide the basis for a motion for a mistrial, yet would as effectively stave off an acquittal and thus preserve the possibility of a retrial. Suborning perjury would be a good example. It can be argued that if the prosecutor commits a covert error for the same purpose that he might have committed an open error calculated to evoke a motion for a mistrial (before *Kennedy* made this tactic unprofitable)—namely, to prevent an acquittal and so preserve the possibility of retrying the defendant even if the error is sure to be discovered and result in a reversal of the conviction either on direct appeal or on collateral attack— the double jeopardy clause should protect the defendant against being retried. *Wallach* does not hold that the argument is sound, but in a considered dictum concludes that it may well be sound. See also *United States v. Pavloyianis*, 996 F.2d 1467, 1473-75 (2d Cir. 1993); *United States v. Gary*, 74 F.3d 304, 314-15 (1st Cir. 1996); *State v. Colton*, 234 Conn. 683, 663 A.2d 339, 346-48 (1995); contra, *State v. Swartz*, 541 N.W.2d 533, 538-40 (Iowa App. 1995).

So at argument we asked the prosecutor whether there was a principled distinction between the open error, which might lead to a mistrial, and the covert error not discovered till after trial. He could not think of any. He could have pointed to language in *Kennedy* and other cases to the effect that, as we put it in *United States v. Oseni*, 996 F.2d 186 (7th Cir. 1993), the only prosecutorial intent that is relevant to double jeopardy is "intent to terminate the trial, not intent to prevail at this trial by impermissible means." *Id.* at 188. "It doesn't even matter that he knows

he is acting improperly, provided that his aim is to get a conviction." *Id.* But this language . . . does not have reference to the case in which the prosecutor does not expect to prevail at *this* trial—the case in which he knows that his misconduct is likely to be discovered and that if it is discovered the verdict will be set aside either on direct appeal or, later, in a collateral attack on the conviction— and what he is seeking to obtain by committing a reversible error is the opportunity to retry a defendant who but for the error would be acquitted. In such a case, the prosecutor's ultimate aim is not to obtain a conviction at this trial but to obtain a conviction at a subsequent trial, and that was not a consideration in the cases that we have just been citing.

Yet it would be a great burden on the courts if every reversal traceable to a prosecution-induced error at trial gave rise to a *Kennedy*-style inquest on the prosecutor's motives; and it is possible to read *Kennedy* as merely carving a narrow exception to the rule that by moving for a mistrial a defendant waives his defense of double jeopardy to a retrial. And so we have left open the question whether to adopt *Wallach's* dictum as the law of this circuit, *United States v. Doyle*, 121 F.3d 1078, 1085 (7th Cir. 1997), as has the Eighth Circuit. *Jacob v. Clarke*, 52 F.3d 178, 182 (8th Cir. 1995). We need not bite the bullet in this case either. For it is clear that a defendant who wants the district court (or this court on appeal from an adverse ruling by the district court) to block a retrial on the basis of prosecutorial error must show that the prosecutor committed the error *because* he thought that otherwise the jury would acquit and he would therefore be barred from retrying the defendant. It is not enough that there was an error; it is not enough that it was committed or procured by the prosecutor; it is not enough that it was deliberate prosecutorial misconduct; it must in addition have been committed for the purpose of preventing an acquittal that, even if there was enough evidence to convict, was likely if the prosecutor refrained from misconduct. Any greater extension of *Kennedy* must be left to the Supreme Court, in view of the danger of adding a double jeopardy tail to every

appellate-reversal dog. [*Catton, supra* at 807-808 (citations omitted; emphasis in original).]

The *Catton* court rejected the defendant's double jeopardy argument because he had failed to request an evidentiary hearing to probe the motives of the prosecutor, and "without such a hearing all the defense had was suspicion, and suspicion isn't enough to satisfy *Kennedy* or *Wallach*." *Catton, supra* at 808.

In *State v Colton*, 234 Conn 683; 663 A2d 339 (1995), the Connecticut Supreme Court addressed the issue whether "the double jeopardy clause will bar the retrial not only of a criminal defendant whose conviction was reversed for evidentiary insufficiency, but also of a defendant whose conviction in the first trial was secured by prosecutorial misconduct." *Id.* at 687. Citing and quoting *Wallach, supra* at 916, the court ruled that "we agree with the Second Circuit Court of Appeals that *Kennedy* logically should be extended to bar a new trial, even in the absence of a mistrial or reversal because of prosecutorial misconduct, if the prosecutor in the first trial engaged in misconduct with the intent 'to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct.' " *Colton, supra* at 696.

In *State v Lettice*, 221 Wis 2d 69, 75; 585 NW2d 171 (Wis App, 1998), the Wisconsin Court of Appeals, also relying on *Wallach*, held that "double jeopardy bar[red] retrial because the prosecutor's action was undertaken with the intent to prevent an acquittal or to prejudice the possibility of an acquittal that the prosecutor believed would occur in the absence of his misconduct."

In *People v Batts*, 30 Cal 4th 660, 692; 134 Cal Rptr 2d 67; 68 P3d 357 (2003), the California Supreme Court, analyzing the state constitution's double jeopardy provision, noted the need to carefully contemplate

the standard for a remedy with respect to prosecutorial misconduct that went beyond the sanction of a new trial:

> [T]he standard that we adopt should not be so broad as to lead to the imposition of the double jeopardy bar—with its drastic sanction prohibiting retrial—in circumstances in which such a sanction is unwarranted. What is needed is a standard that sufficiently protects double jeopardy interests, but also retains and enforces a distinction between "normal" prejudicial prosecutorial misconduct that violates a defendant's due process right to a fair trial and warrants reversal and retrial, and the form of prosecutorial misconduct that not only constitutes a due process violation but also a double jeopardy violation, and hence warrants not only reversal but dismissal and a bar to reprosecution.

After consideration of various factors and concerns, the California court crafted the following standard:

> [Double jeopardy] bars retrial following the grant of a defendant's mistrial motion (1) when the prosecution intentionally commits misconduct for the purpose of triggering a mistrial, and also (2) when the prosecution, believing in view of events that unfold during an ongoing trial that the defendant is likely to secure an acquittal at that trial in the absence of misconduct, intentionally and knowingly commits misconduct in order to thwart such an acquittal—and a court, reviewing the circumstances as of the time of the misconduct, determines that from an objective perspective, the prosecutor's misconduct in fact deprived the defendant of a reasonable prospect of an acquittal. [*Id.* at 695.]

In *Commonwealth v Smith*, 532 Pa 177, 186; 615 A2d 321 (1992), the Pennsylvania Supreme Court went further than the cases cited above, holding:

> We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, *but also when the conduct of the prosecutor is intentionally under-*

*taken to prejudice the defendant to the point of the denial of
a fair trial.* Because the prosecutor's conduct in this case
was intended to prejudice the defendant and thereby deny
him a fair trial, appellant must be discharged on the
grounds that his double jeopardy rights, as guaranteed by
the Pennsylvania Constitution, would be violated by con-
ducting a second trial. [Emphasis added.]

I tend to believe that this holding goes much too far,
given that prejudicial prosecutorial misconduct that de-
nies a defendant his due process right to a fair trial
typically calls only for a new trial. See *Phillips, supra* at
219.

In *State v Barton*, 240 SW3d 693, 702 (Mo, 2007), the
Missouri Supreme Court examined an argument made
pursuant to *Wallach* and *Catton*, and it ruled that even
if the United States Supreme Court were to adopt an
extension of *Kennedy*, the defendant would not meet
"the required showing that the prosecutor intended to
subvert double jeopardy protection."

Here, the purpose of this concurrence, in light of the
persuasive authority cited above, is to simply provide
some reasoning why I believe it would be legally un-
sound to render a holding that suggests or indicates
that prosecutorial misconduct can never mandate the
double jeopardy remedy of barring retrial, leaving a
defendant, no matter how egregious the misconduct, to
the sole remedy of a new trial.[5] Considering that retrial
is barred under the Double Jeopardy Clause when it is

---

[5] I recognize that the caselaw that I have cited chiefly addressed situations
in which a defendant was actually convicted, as opposed to the situation here
where a mistrial was declared on the basis of a deadlocked jury. I see no
reason why this distinction calls for a different analysis. Indeed, where a jury
is unable to convict or acquit, there would appear to be more compelling
reasons to bar retrial if a prosecutor intentionally engaged in misconduct for
the purpose of avoiding or preventing an acquittal that the prosecutor
believed was likely absent the misconduct; the jury was in fact partly in favor
of acquittal.

determined that there was insufficient evidence to sustain a conviction, there is logic to permitting that same remedy when a prosecutor is faced with proper evidence that he or she deems insufficient to secure a conviction, but nonetheless proceeds with the trial, intentionally relying on perjured testimony in order to avoid what is believed to be a likely acquittal. In such circumstances, had legally sound evidence alone been presented that was insufficient to sustain a conviction, retrial would not be allowed.[6]

Moreover, it is not necessary, at this time, to consider adopting an extension of *Kennedy*, as discussed in *Wallach, Catton*, and the other cases, because, assuming an extension was recognized, double jeopardy did not

[6] I note that my analysis does not conflict with our Supreme Court's analysis in *Sierb, supra*. In *Sierb*, the defendant endured two trials that culminated in mistrials because the jurors were unable to agree on a verdict, and the trial court precluded the prosecution from commencing a third trial on the basis of an inferred remedy arising from the substantive Due Process Clause of the constitution. *Id.* at 520-522. No prosecutorial misconduct was at issue; the trial court simply believed that it would be fundamentally unfair to put the defendant through a third trial. *Id.* at 521-522. The Court held that due process guarantees under the state and federal constitutions "do not create a right to preclude retrial *of this defendant in these circumstances.*" *Id.* at 521 (emphasis added). The defendant in *Sierb* could not resort to any arguments under the Double Jeopardy Clause, considering that it gave him no protection from retrial in light of the existence of manifest necessity for the mistrials and the absence of misconduct. The defendant thus attempted to extract a double jeopardy type remedy from the Due Process Clause, solely in and of itself, relying on the concept of substantive due process. The Court noted that "[t]he United States Supreme Court has declined to expand substantive due process as an *independent* source of limitation on government." *Id.* at 526 (emphasis added). Rather, as indicated earlier, "the number of trials is not a violation of due process unless it also places the defendant in double jeopardy." *Id.* at 525 n 13. Here, I am merely envisioning circumstances in which retrial might be improper on the basis of prosecutorial misconduct that gives rise to a due process violation that is so egregious that double jeopardy protection must be invoked as implemented under the Double Jeopardy Clause or through the Due Process Clause.

bar retrying defendant under the facts of this case. At most, had defendant known the truth regarding the informant's identity and the circumstances regarding the deal the informant had with the police, defendant could have impeached his credibility. Given that the informant testified that he was unaware that the bags at issue contained cocaine, impeaching his credibility would have had limited value. On the existing record, there was evidence of error, i.e., use of perjured testimony, and there was evidence that the prosecutor deliberately and intentionally suborned perjury, but there is no indication whatsoever that the prosecutor committed the misconduct for the purpose of avoiding or preventing an acquittal, nor can it be said that an acquittal was likely to occur if the prosecutor refrained from the misconduct or that the prosecutor believed such was the case.

I respectfully concur in affirming defendant's conviction.