# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KETNER Minors.

UNPUBLISHED
May 28, 2015

No. 324427
Clare Circuit Court
Family Division
LC No. 13-000089-NA

Before: BOONSTRA, P.J., and SAAD and MURRAY, JJ.

PER CURIAM.

Respondent appeals the trial court's order that terminated his parental rights under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (child will likely be harmed if returned). For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

In October 2013, the Department of Human Services (DHS) filed a petition to take jurisdiction over the minor children, A.K. and E.K.[1] DHS alleged that respondent: (1) abused drugs and exposed the children to drug-related activities; (2) failed to provide a hygienic living environment for the children, as neither his home nor his mother's home were sanitary or had running water; (3) used state benefits intended to help feed, shelter, and clothe his children for his own purposes; (4) did not use or cooperate with state services provided to help him improve his parenting skills and battle his drug addiction; (5) threatened and stole property from his mother when she attempted to care for the children; and (6) failed to enroll E.K. in school, despite his being of appropriate age.

At the December 2013 adjudication hearing, respondent waived his right to contest the trial court's assumption of jurisdiction over his children. He further admitted that he had substance abuse problems, and that neither he nor his mother had running water in their residences. The children's case worker testified that respondent appeared intoxicated at every parenting time session she had observed. She also noted that A.K. confronted respondent about these repeated instances of insobriety, and that A.K. was familiar with the symptoms of narcotic

---

[1] The children's mother apparently died of a drug overdose in 2010.

-1-

use. A.K. also indicated she had seen her father use narcotics intravenously, and told the case worker of "needles [and] different kinds of medicines," and instances when "non-family members exchanged drugs." Indeed, respondent's recent drug tests reflected abuse of various drugs, including morphine.[2]

The trial court concluded the adjudication hearing by observing that the state had provided extensive services to respondent to help him improve his parenting skills and create a safe environment for his children:

> The department has made reasonable efforts to continue the children in their home with their father. Those reasonable effort[s] include Families First, Family Intervention, Personal Goals, 1016 Substance Abuse . . . services, . . . child protective service investigations and ongoing services, the school efforts of the Harrison Community Schools, housing assistance and various types of cash assistance . . .

Nonetheless, respondent continued to abuse drugs, lacked a significant income, and failed to acquire a home suitable for children. At a dispositional hearing in July 2014, the children's case worker noted that respondent had not called to ask about the children since the suspension of his parental visits six months earlier. She also stated that neither A.K. nor E.K. wanted to see their father. Accordingly, the case worker recommended DHS seek termination of respondent's parental rights.

The trial court held a termination hearing in October 2014. It heard testimony from respondent, a psychologist who had spoken with the children and diagnosed respondent, respondent's family physician, and the children's case worker. Respondent said he took prescription medication and that he had been convicted for possession of cocaine and marijuana. He also noted that he was living with his mother in a house that had electricity but no running water.

The psychologist testified that respondent had "opiate dependence" and "antisocial and dependent features." The children's case worker stated that though respondent completed a substance-abuse assessment, he did not follow through on the resulting recommendations, and continued to fail multiple drug tests. She told the court that she believed the conditions that led to the adjudication continued to exist, and that there was a reasonable likelihood the children would be harmed if returned to respondent. After the conclusion of testimony, the trial court found statutory grounds for termination under 712A.19b(3)(c)(*i*), (g) and (j), and that termination was in the children's best interests.

On appeal, respondent argues that: (1) the trial court denied him due process when it refused to adjourn the proceedings in deference to respondent's desire to change counsel; (2)

---

[2] Respondent admitted taking various prescription pain medications, but claimed he only used what his doctor prescribed. He also admitted to being addicted to Oxycontin in the past, but said he "went into rehab" and "took care" of his addiction.

DHS created the conditions that led to the termination of his parental rights; (3) the trial court erred when it found clear and convincing evidence to terminate his parental rights under 712A.19b(3)(c)(*i*), (g) and (j).

## II. STANDARD OF REVIEW

"We review for clear error both the [trial] court's decision that a ground for termination has been proven by clear and convincing evidence, and, where appropriate, the court's decision regarding the child's best interest." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Constitutional matters and other questions of law are reviewed de novo. *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014). However, unpreserved claims of error are reviewed for plan error that affects the complainant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A trial court's decision regarding a party's choice of counsel is reviewed for an abuse of discretion. *People v Echavarria*, 233 Mich App 356, 368; 592 NW2d 737 (1999).

## III. ANALYSIS

### A. REPLACEMENT COUNSEL

A respondent in a child protective proceeding is entitled to the assistance of legal counsel, including to counsel appointed at public expense if the respondent "is financially unable to employ an attorney on his own behalf." *In re Rood*, 483 Mich 73, 94; 763 NW2d 587 (2009). The right to counsel implicates the right to an attorney of one's own choosing, but the U.S. Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar . . . ." *United States v Gonzalez-Lopez*, 548 US 140, 152; 126 S Ct 2557; 165 L Ed 2d 409 (2006) (citation omitted). See also *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2010). Further, a trial court owes a party less deference concerning choice of counsel where that party is relying on publicly funded legal representation instead of privately retained counsel. See *Gonzalez-Lopez*, 548 US at 144. Appointment of substitute counsel is warranted only upon a showing of good cause and if substitution will not unreasonably disrupt the judicial process. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011).

Here, the state provided respondent with an attorney who represented him throughout this case, from the preliminary hearing in October 2013 to the termination hearing a year later in October 2014. Respondent requested an adjournment in the termination hearing, because he wanted to replace his counsel with a new state-funded attorney, with whom he had spoken the day before the termination proceeding. The trial court denied respondent's motion because: (1) the proposed new attorney had failed to contact the court and never made an appearance in the matter; and (2) the case had been pending for over a year.

The trial court did not abuse its discretion when it rejected respondent's demand for an adjournment to obtain new counsel. Respondent's decision to make this request on the day of the termination hearing indicates that it might have been an inappropriate attempt to delay the hearing. Moreover, the fact that respondent's proposed attorney did not file an appearance, or otherwise signal to the court any intention to represent him, indicates that the attorney did not

intend to represent him, and certainly had not assumed any duty of zealous representation in this matter. See MRPC 1.1(b); *Bauer v Ferriby & Houston, PC*, 235 Mich App 536, 538; 599 NW2d 493 (1999). And respondent did not have "good cause" to change counsel—for example, there is no allegation or suggestion of a breakdown in the attorney-client relationship. *Strickland*, 293 Mich App at 397.

The trial court therefore properly denied respondent's request for adjudication to select new counsel, and respondent's arguments to the contrary are without merit.

## B. CONDITIONS THAT LED TO TERMINATION

"It is well established that parents have a significant interest in the companionship, care, custody, and management of their children. This interest has been characterized as an element of 'liberty' to be protected by due process." *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993). Here, respondent unavailingly (and incoherently) claims DHS created the conditions that led to the termination of his parental rights, because the medical facility that performed his drug tests was not the facility respondent believed would perform the drug tests. Respondent thus implies that DHS's choice of testing service caused him to submit drug tests that showed he continued to abuse drugs.

At the outset, we note that respondent has failed to preserve this issue for appeal, because he did not raise it in the trial court. *People v Metamora Water Service, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). It is accordingly reviewed for plain error affecting his substantial rights. *Carines*, 460 Mich at 763. Neither respondent nor the trial court ever insisted or stated that testing of defendant's urine and/or blood samples would be conducted by any specific facility. Respondent offers no reason to doubt the accuracy of any test result submitted to the court, and fails to explain why, if he was suspicious of the accuracy of the testing service used by DHS, he did not seek results from a service of his own choosing. Nor does he provide any legal authority for the proposition that the state's use of a certain drug-testing service constitutes a violation of due process. See *National Waterworks, Inc v Intl Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007) ("[a] party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim").

More importantly, respondent's argument on this matter is simply a distortion of the record. As noted, DHS attempted to help respondent overcome his drug addiction, alleviate his poverty, and improve his parenting skills. It was respondent's own actions, not those of DHS, that led to the termination of his parental rights.[3]

## C. STATUTORY GROUNDS FOR TERMINATION

---

[3] Equally unconvincing is respondent's unsupported and unpreserved claim that the trial court violated his right to due process when it suspended his parenting time. There is no indication that the trial court acted improperly when it did so, as respondent continued to abuse drugs and evinced little interest in the welfare of his children at the time.

As noted, the trial court terminated respondent-appellant's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide as follows:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts*, 297 Mich App at 40. A reviewing court defers to the special ability of the trial court to judge the credibility of witnesses. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Here, respondent's mere assertion that the trial court lacked statutory grounds to terminate his parental rights is unconvincing. In fact, respondent's actions and the testimony of numerous witnesses provided the trial court with ample grounds to terminate respondent's parental rights under the subsections of MCL 712A.19b(3) mentioned above.

Respondent's substance abuse and inability to provide a suitable home led to the court's assumption of jurisdiction over his children in October 2013, and these conditions continued to exist a year later at the termination hearing in October 2014. MCL 712A.19b(3)(c)(*i*). Despite DHS's provision of services to respondent to help him battle his drug addiction and find adequate housing, there was no indication that respondent had made any progress in either regard by October 2014, and no reason to assume that he would do so in the future. MCL 712A.19(3)(g). And in light of A.K.'s descriptions of her father's drug use—including his intravenous drug use, and exchange of drugs with strangers—it is likely that the children would

-5-

have suffered emotional abuse and distress, and perhaps worse, had the trial court not terminated his parental rights. MCL 712A.19b(3)(j).[4]

Affirmed.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Christopher M. Murray

---

[4] "Failure to substantially comply with a court-ordered case service plan is evidence that return of the child to the parent may cause a substantial risk of harm to the child's life, physical health, or mental well being." *In re Trejo*, 462 Mich 341, 346 n 3; 612 NW2d 407 (2000) (internal quotation marks and citation omitted).