# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MICHAEL RAY THOMAS,

      Defendant-Appellant.

UNPUBLISHED
May 11, 2017

No. 329750
Macomb Circuit Court
LC No. 2014-003488-FH

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant, Michael Thomas, of possession of child sexually abusive material, MCL 750.145c(4), using a computer to commit possession of child sexually abusive material, MCL 752.796, and unlawful use of the Internet to solicit child sexually abusive activity, MCL 750.145d. The trial court sentenced Thomas to concurrent prison terms of one to four years for the possession of child sexually abusive material conviction, one to seven years for the unlawful use of a computer conviction, and 12 to 20 years for the unlawful use of the Internet conviction. Thomas appeals as of right. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

The police became involved with Thomas after Paul McNeil reported being involved in an Internet exchange in September 2012, in which he was contacted by an individual who inquired about sexual activity with children. The person sent McNeil an email containing three photos of children, one of which showed sexual activity between a young female and a male. The person asked McNeil to send him nude photographs of McNeil's children. McNeil instead contacted the police. Using McNeil's email account, the police were able to obtain the IP address for the source of the sender's emails, which was traced to Thomas. The police then obtained search warrants for Google and Comcast accounts and Thomas's home, which he shared with his girlfriend, Karen Cipriano, and her young son.

The police seized a number of computers and other electronic storage devices from Thomas's home. A forensic computer expert examined the computers and equipment. She was able to recover parts of the conversations with McNeil on two of the computers, along with 115 images of child pornography. The computers also contained search terms typically used by

persons looking for child pornography on the Internet, programs used to anonymously share such files, and web histories of such searches.

In addition, the prosecution presented evidence of a prior email exchange, from late 2011 to early 2012, between Detective Marcus Penwell, a police officer in Ohio who investigated child pornography cases and another person who used the email address GoodTimes.Jones@gmail.com, which was the same email address used in the communications with McNeil. The person sent Penwell several images of young children, including some showing children engaged in sexual activity, and the person sought similar images of child sexual activity from Penwell.

Thomas did not dispute that child sexually abusive material was found on his computers. However, he denied knowledge of the images and denied that he was the person who communicated with McNeil. Thomas argued that anyone near his home would have been able to access his wireless network and plant the images on his computers using remote access software. The defense theory was that the images and the emails to McNeil were planted by Alexander Waschull, Cipriano's former boyfriend and the father of Cipriano's child. Thomas presented evidence that Waschull and Cipriano were involved in an ongoing custody dispute, that Waschull was upset that his child was spending time with Thomas, and that Waschull had become obsessed about Thomas's case and written articles and acquired numerous documents about it.

## II. OTHER ACTS EVIDENCE

### A. STANDARD OF REVIEW

Thomas first challenges the introduction of the testimony relating to Detective Penwell's email exchange in late 2011 and early 2012 with a person using the email address GoodTimes.Jones@gmail.com to inquire about child pornography and send images of children engaged in sexual activity. Thomas argues that this evidence was irrelevant, unfairly prejudicial, and inadmissible under MRE 404(b)(1). Although the prosecution filed a pretrial notice of its intent to offer this evidence at trial pursuant to MRE 404(b)(1), Thomas did not challenge the admissibility of the evidence in a pretrial motion or at trial. Therefore, this issue is unpreserved and our review is limited to plain error affecting Thomas's substantial rights. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *Id*.

### B. ANALYSIS

MRE 404(b)(1) prohibits evidence of a defendant's other bad acts to prove a defendant's character or propensity to commit the charged crime, but permits such evidence for a noncharacter purpose when that evidence is relevant to a material issue at trial and the probative value of the evidence is not substantially outweighed by its prejudicial effect. The purpose of the rule is to prevent a jury from convicting a defendant because it believes he is a bad person. *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b)(1) if the evidence is (1) offered for a proper purpose, i.e., not to prove the defendant's character or propensity to commit the crime, (2)

relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The trial court may also provide the jury with a limiting instruction for any evidence admitted under MRE 404(b)(1). *Id*. at 75.

The prosecution has the initial burden of establishing the relevancy of the evidence for a permissible purpose under MRE 404(b)(1). *People v Knox,* 469 Mich 502, 509; 674 NW2d 366 (2004). " 'Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence.' " *Id*., quoting *Crawford,* 458 Mich at 387. Relevant evidence may be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *People v Sabin (After Remand)*, 463 Mich 43, 58; 614 NW2d 888 (2000). Unfair prejudice does not mean any prejudice, but refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (citation and quotation marks omitted).

In this case, the defense did not dispute that child sexually abusive material was found on Thomas's computers. However, Thomas denied any knowledge of the material, and he also denied being the person who communicated with McNeil for the purpose of soliciting child sexually abusive activity. Therefore, the principal issue in the case was the identity of the person who communicated with McNeil and sent him images of child pornography. The evidence that Penwell communicated with a person who transmitted images of child sexually abusive material and who used the same email address as the person who communicated with McNeil, from an IP address that was also linked to Thomas, made it more probable that it was Thomas who used the email address GoodTimes.Jones@gmail.com to communicate with McNeil.

The fact that Penwell could not say with certainty that Thomas was the person he was communicating with through the GoodTimes.Jones@gmail.com email address did not preclude admission of the evidence. MRE 404(b)(1) is a rule of inclusion, *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010), and it provides that other acts evidence may be admissible to prove identity, MRE 404(b)(1). Here, Penwell's contact with the person using GoodTimes.Jones@gmail.com—an email address traced to Thomas's home and the same email address used in the communications with McNeil—was circumstantial evidence that it was Thomas who used that email address, particularly where the person made other comments during the chat that were consistent with Thomas's home business. Therefore, the evidence was relevant for a proper, noncharacter purpose under MRE 404(b)(1).

Further, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Thomas maintained that while the email address GoodTimes.Jones@gmail.com was traced back to his home and Internet provider, it was possible that anyone with access to his Wi-Fi network could have placed the images on his computers and communicated with McNeil with that email address. Thomas accused Waschull of planting the pornographic images and using his Internet service to communicate with McNeil, ostensibly because Waschull did not like that his child was spending time with Thomas and to provide Waschull with leverage in his ongoing custody dispute with Cipriano by showing that Cipriano

-3-

was involved in a relationship with an unsavory person. However, Penwell's testimony indicated that his contacts with the person who used the GoodTimes.Jones@gmail.com email address occurred in late 2011 or early 2012, which was before Thomas and Waschull knew each other. The fact that the communications with Penwell predated the timeframe in which Waschull would have developed a motive to frame Thomas significantly increased the probative value of the prior acts evidence. Moreover, while the evidence was prejudicial, it was not unfairly prejudicial. Penwell's testimony did not focus on matters that were extraneous to the primary issue, and he conceded that he did not know the actual name of the person with whom he communicated. His testimony allowed the jury to weigh whether the similar contacts with Penwell and McNeil, from the same email address, was simply a coincidence or whether Thomas was engaged in a similar pattern of conduct with both persons. Finally, the trial court instructed the jury on the limited, permissible purpose for which the evidence could be considered, thereby reducing the potential for unfair prejudice.

In sum, because the challenged evidence was relevant to a proper, noncharacter purpose under MRE 404(b)(1), and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403, there was no plain error in introducing this evidence at trial.

### III. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Next, Thomas raises several claims of prosecutorial misconduct. First, in the brief filed by his lawyer, Thomas argues that he was denied a fair trial by the prosecutor's remarks, made during closing argument, characterizing the defense theory as a "smoke screen" that was intended to deflect the jury's attention away from the evidence. Second, in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Thomas argues that the prosecutor committed misconduct by allowing perjured testimony from Waschull, by interjecting personal opinions and knowledge of the case while questioning witnesses, and by making inaccurate statements or improperly expressing his personal opinions about the case during closing and rebuttal arguments. Because Thomas did not object to the prosecutor's questions or remarks at trial, this issue is unpreserved. An unpreserved issue of prosecutorial misconduct is reviewed for plain error affecting substantial rights. *People v Abraham,* 256 Mich App 265, 274; 662 NW2d 836 (2003). This Court will not reverse if the prejudicial effect of any improper conduct could have been cured by a timely instruction from the trial court. *People v Williams,* 265 Mich App 68, 70-71; 692 NW2d 722 (2005). Claims of prosecutorial misconduct are decided case by case and the challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996).

### B. ANALYSIS

The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 267; 531 NW2d 659 (1995). A prosecutor is afforded great latitude during closing argument and is permitted to argue the evidence and reasonable inferences arising from the evidence in support of his or her theory of the case. *Id*. at 282. Likewise, while prosecutors have a duty to see to it that a defendant receives a fair trial, they

may use "hard language" when the evidence supports it and they are not required to phrase their arguments in the blandest of terms. *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). However, the prosecutor must refrain from resorting "to civic duty arguments that appeal to the fears and prejudices of jury members or express[ing] their personal opinions of a defendant's guilt, and [they] must refrain from denigrating a defendant with intemperate and prejudicial remarks." *Bahoda*, 448 Mich at 283. Additionally, a prosecutor is not permitted to personally attack the defendant's lawyer, *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003), nor may he suggest that the defendant's lawyer is "intentionally attempting to mislead the jury." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

Here, during closing argument, the prosecutor asserted that the defense theory that Thomas was framed by Waschull was a "smoke screen to deflect the evidence" from Thomas's guilt. In particular, he stated that Thomas "has created a well-crafted, or what I would say smoke screen to deflect the evidence from [Thomas's] guilt in this case. I submit to you that when the smoke clears, you look at and analyze that evidence carefully, it amounts to nothing." The prosecutor then engaged in a thorough review of the evidence allegedly showing that Thomas was framed, and then, without denigrating Thomas or his lawyer, the prosecutor explained why the evidence did not actually support the defense theory. Because the prosecutor was not required to phrase his arguments in the blandest terms possible, it was not improper for the prosecutor to use the term "smoke screen" to argue that the defense theory was not credible in light of the facts and evidence. Moreover, to the extent that the prosecutor's comments could be considered improper, a timely objection by Thomas could have cured any perceived prejudice. Accordingly, Thomas is not entitled to relief.

Thomas also argues that throughout the closing and rebuttal argument the prosecutor made inaccurate statements or improperly expressed his personal opinions about the case. We have reviewed the challenged comments and, viewed in context, the prosecutor was merely arguing the evidence, and reasonable inferences arising therefrom, in the context of explaining why the evidence did not support the defense theory of the case. The prosecutor did not inject any personal knowledge of facts not supported by the evidence, and his expressions of opinion were based on the evidence. Accordingly, there was no plain error. Further, to the extent that the prosecutor may have confused some dates or timelines in his comments that is not a basis for appellate relief because an objection could have cured any perceived prejudice. *Williams*, 265 Mich App at 70-71. Even without an objection, the trial court instructed the jury that "[t]he lawyers' statements and arguments are not evidence" and that the jury "should only accept things the lawyers say that are supported by the evidence." These instructions were sufficient to protect Thomas's substantial rights.

Thomas also argues that the following remarks in the prosecutor's closing argument were improper:

> Now, defense counsel attempts to answer the question of how this stuff got on [defendant's computers]. It's a question that he has a burden to answer is how this stuff got onto computers in Mr. Thomas's home without him knowing, without, actually without him having done it.

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). Therefore, the prosecutor's comment was clearly improper. However, the error does not require reversal. The comment was brief and isolated, and a timely objection could have cured any prejudice by obtaining an instruction advising the jury on the appropriate burden of proof. *Williams*, 265 Mich App at 70-71. In addition, even without an objection, the trial court properly instructed the jury on Thomas's presumption of innocence and the prosecutor's burden to "prove each element of the crime beyond a reasonable doubt," and that "[t]he defendant is not required to prove his innocence or to do anything." The court also instructed the jury that "[i]f a lawyer says something different about the law, follow what I say." These instructions were sufficient to protect Thomas's substantial rights, *People v Steanhouse*, 313 Mich App 1, 35; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016), and the jury is presumed to have followed the court's instructions. *People v Henry*, 315 Mich App 130, 150; 889 NW2d 1 (2016). Accordingly, Thomas is not entitled to relief on this basis.

Next, Thomas argues that the prosecutor knowingly used perjured testimony to obtain his convictions because Waschull falsely denied having any contact with the prosecutor's office about this case. A conviction obtained through the knowing use of perjured testimony "must be set aside if there is any reasonable likelihood that the false testimony could have affected" the jury's decision. *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009) (citation and quotation marks omitted). Waschull was called as a defense witness to show that he was framing Thomas for the charged offenses, and his testimony denying any contact with the prosecutor's office about Thomas's case was elicited by Thomas's lawyer, not the prosecutor. Further, Thomas has not established that Waschull's testimony was false. Thomas cites several pages of trial transcript and argues that Waschull's denial is refuted by testimony demonstrating his explicit knowledge of details about Thomas's case. However, the fact that Waschull had knowledge about various details of the case does not establish that he acquired that knowledge from the prosecutor's office. In addition, because the cited testimony was presented to the jury, the jury was able to decide for itself whether it affected the credibility of Waschull's denial. Thomas refers to two other documents that he contends support his claim that Waschull's trial testimony was false. We have reviewed those documents and neither one supports Thomas's contention that Waschull presented false testimony. Accordingly, Thomas has failed to establish a plain error affecting his substantial rights.

Thomas also argues that the prosecutor improperly interjected his personal opinions or knowledge of the case when cross-examining Thomas about a video recording that Thomas offered as proof that he was in his garage at the time one of the emails at issue was sent or received. Our review of the challenged line of questioning reveals that Thomas was subjected to appropriate cross-examination intended to challenge the competency of the evidence produced. Thomas has not shown that the prosecutor's questioning was improper, let alone plain error.[1]

---

[1] Thomas argues that the prosecutor engaged in similar tactics with other witnesses, but he only cites transcript pages where the improper questioning allegedly occurred. One of the witnesses

IV. GREAT WEIGHT AND SUFFICIENCY OF THE EVIDENCE

A. STANDARD OF REVIEW

Thomas next argues that the trial court erred by denying his motion for a new trial based on the great weight of the evidence. We review "for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *Id*.

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Further, the resolution of credibility questions is within the exclusive province of the jury. *People v DeLisle*, 202 Mich App 658, 662; 509 NW2d 885 (1993). [*Id*. at 469-470.]

Thomas also asserts that there was insufficient evidence to convict him of the charged crimes. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process requires, that when the evidence is viewed in the light most favorable to the prosecution, a reasonable trier of fact could find each element of the crime established beyond a reasonable doubt. *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). It is the trier of fact's role to judge credibility and weigh the evidence. *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011).

B. ANALYSIS

Although Thomas presented evidence in support of his theory that Waschull had a motive to frame Thomas, the prosecution presented circumstantial evidence pointing to Thomas as the only person who had access to all of the computers and storage devices on which the child sexually abusive images were found. A forensic examination of Thomas's devices showed that the email address used to communicate with McNeil was used on Thomas's computers before Waschull even knew Thomas, and before Cipriano moved in with Thomas. In addition, the images of child pornography were found on multiple computers and storage devices in Thomas's

was Waschull, but Thomas does not explain how the questioning of Waschull was improper. The other witness was Cipriano, but Thomas again fails to explain why the prosecutor's questions were improper. Given Thomas's failure to explain why the subject questioning was improper, he has not satisfied his burden of establishing a plain error.

home, and those devices also contained evidence of search terms typically used by persons looking for child pornography on the Internet, programs used to anonymously share such files, and web histories of such searches. That circumstantial evidence was strong proof that Thomas used those devices to download and search for child sexually abusive material on the Internet and solicited the offense of child sexually abusive activity in the contacts with McNeil. Furthermore, the communications with Penwell, which were made using the same email address as the communications with McNeil, and which similarly involved inquiries about sexual activity with children, occurred before Waschull knew Thomas, thereby undercutting Thomas's theory that Waschull planted that evidence. The prosecution also presented expert testimony that the computers on which child sexually abusive material was found did not contain software or malware that would allow a person to access the computers remotely. While the defense made a concerted effort to show that it was possible that someone else planted the evidence on defendant's computers, in light of the body of evidence refuting that theory and pointing to Thomas as the person responsible for committing the charged offenses, the jury's verdicts are not so manifestly against the great weight of the evidence that it would be a miscarriage of justice to allow the verdicts to stand.

Thomas appears to also argue that the evidence was insufficient to support his convictions because of the lack of evidence that he was the person who committed the charged offenses. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The above evidence, viewed in the light most favorable to the prosecution, supports an inference that Thomas was the only person who had access to all of the computers and storage devices on which the child sexually abusive images were found, and it identifies him as the person who solicited the child sexually abusive activity in the email communications with McNeil. Accordingly, there is sufficient evidence to establish that Thomas was the individual who committed the charged crimes.

## V. SUPPRESSION OF EVIDENCE

### A. STANDARD OF REVIEW

In his Standard 4 brief, Thomas argues that the prosecutor was responsible for the suppression of exculpatory evidence when the router from his home was not seized or analyzed by the police during the execution of the search warrant at his home. Because Thomas did not raise this issue in the trial court, it is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Wood*, 307 Mich App 485, 525; 862 NW2d 7 (2014), vac in part on other grounds 498 Mich 914 (2015).

### B. ANALYSIS

The right to due process under US Const, Am XIV, requires that the prosecution not suppress material evidence favorable to the defense. *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Fox (After Remand)*, 232 Mich App 541, 549; 591 NW2d 384 (1998). To establish a *Brady* violation, a defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence was material. *People v Chenault,* 495 Mich 142, 155; 845 NW2d 731 (2014). However, when the government fails to preserve evidence whose exculpatory value is

indeterminate or only "potentially useful," the defendant has the burden of proving that the government acted in bad faith in failing to preserve the evidence. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). Neither the police nor the prosecution has a duty to assist a defendant in developing potentially exculpatory evidence. *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). The bad-faith standard from *Youngblood* does not apply to evidence that has not yet been developed. *Id*.

The record indicates that the police did not seize the router from Thomas's home when they executed a search warrant. Thomas argues that the router would have contained exculpatory information because it would have shown a history of all devices that accessed the Internet through his home network. However, Thomas overstates the evidentiary value of the router. The prosecution's expert explained that a router could be capable of storing its logging history, but only if that feature has been activated. According to the prosecution's expert, the feature typically is not turned on by default. In addition, the logging information must be viewed or examined at the scene. If a router is collected as evidence, it cannot be forensically examined later at another location to determine its logging history. Therefore, while Thomas accurately states that the police did not collect the router as evidence, there is no basis for concluding that it had exculpatory value or that the police destroyed any evidence on the router intentionally or in bad faith. In addition, the police did not suppress that evidence; they only failed to seize the router during the execution of the search warrant. Accordingly, Thomas cannot establish a *Brady* violation.

Moreover, Thomas has not shown that the police acted in bad faith. The prosecution's expert described possibly being able to view the logging history at the search scene, but she was not part of the search team and that method would have only been potentially useful if the router's logging history feature had been activated. Further, to the extent Thomas criticizes the police for not attempting to examine the router to find out if its logging history could be determined, that argument is directed at the failure by the police to develop the evidence. As previously indicated, neither the police nor the prosecution has a duty to assist a defendant in developing potentially exculpatory evidence. *Anstey*, 476 Mich at 461.

Accordingly, we reject this claim of error.

## VI. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

In his Standard 4 brief, Thomas argues that his lawyer provided ineffective assistance. Because Thomas did not raise these claims in an appropriate motion in the trial court, our review is "limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

### B. ANALYSIS

To establish that his lawyer provided ineffective assistance, a defendant must show that his lawyer's performance "fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*,

446 Mich 298, 338; 521 NW2d 797 (1994). The defendant "must overcome the presumption that the challenged action might be considered sound trial strategy." *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, the defendant must show a reasonable probability that, but for his lawyer's errors, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). The burden is on the defendant to establish factual support for his claim of ineffective assistance. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Thomas first complains that his lawyer was ineffective for failing to investigate and present evidence regarding Waschull's efforts to work with the police and the prosecutor to obtain Thomas's convictions. The record does not support this claim. On the contrary, Thomas's lawyer called Waschull as a witness in furtherance of the defense theory that Waschull framed Thomas for the charged offenses. Thomas's lawyer specifically asked Waschull if he had any communications with anyone from the prosecutor's office or anyone in law enforcement about the details of the case. Waschull denied or could not recall any such contacts. Thomas's lawyer confronted Waschull with writings on his blog to show that he had acquired detailed information about Thomas's case, and Waschull conceded that he probably wrote the articles. On appeal, Thomas relies on evidence that he contends supports his claim that there were contacts between Waschull and the police or prosecutor. However, this evidence does not reveal the scope or nature of any contacts. And on this record, Thomas has not established that his lawyer efforts to investigate Waschull's connection with the case fell below an objective standard of reasonableness. In addition, because Thomas has not identified any evidence supporting his contention of improper collusion between Waschull and the prosecutor, Thomas's lawyer was not ineffective for failing to move to disqualify the prosecutor on this ground. Without supporting evidence, any motion would have been futile. A defense lawyer is not required to bring a futile motion. *People v Buie (On Remand)*, 298 Mich App 50, 66; 825 NW2d 361 (2012).

Thomas next argues that his lawyer was ineffective for failing to call a defense expert to respond to the prosecution's forensic expert witness. Again, the record does not support this claim. A lawyer's decision whether to call a witness, including an expert witness, is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it 'deprives the defendant of a substantial defense.' " *Id.* (citation omitted). The record shows that Thomas's lawyer retained an expert to investigate the evidence and that the expert reviewed the evidence and reported to Thomas's lawyer. Thereafter, Thomas's lawyer declined to call the expert witness at trial. His decision not to call the expert was a matter of trial strategy. Because Thomas has not submitted any evidence showing the defense expert's findings, or otherwise explaining why his lawyer declined to call the witness at trial, he has failed to overcome the presumption that the decision not to call the witness was sound strategy.

Thomas also asserts that his lawyer was ineffective for not moving to excuse two jurors for cause. Because the selection of jurors is a matter of trial strategy, this Court is disinclined to find ineffective assistance of counsel on the basis of a failure to challenge a juror. *Unger*, 278 Mich App at 257-258. Although Juror No. 53 initially expressed an understanding that Thomas could be convicted if the prosecutor proved most, but not all, of the elements of an offense beyond a reasonable doubt, the trial court corrected that understanding and explained that the

prosecutor is required to prove "each and every element." The court thereafter asked the jurors, "Do you all get that?" and the jurors responded affirmatively. In light of this record, it was not unreasonable for Thomas's lawyer to believe that Juror No. 53's initial misunderstanding had been corrected by the trial court's explanation, and that the juror now properly understood that the burden was on the prosecutor to prove all elements of the charged offenses beyond a reasonable doubt.

We also reject Thomas's claim that his lawyer was ineffective for not challenging Juror No. 362 for cause after the juror admitted knowing the officer-in-charge from high school. The trial court questioned the juror about how well he knew the officer, and Thomas's lawyer also questioned the juror on this subject. The juror explained that he did not socialize with the officer and that he last saw the officer approximately three years earlier. The juror affirmed that his knowledge of the officer would not prevent him from being fair and impartial or from judging the officer's testimony in the same manner as any other witness. Given this record, Thomas's lawyer had a reasonable basis for concluding that the juror's knowledge of the officer-in-charge from high school did not establish a basis for excusal for cause, either because the juror was biased for a party or would not be able to render a just verdict. MCR 2.511(D)(2) and (3). Thomas's lawyer's decision not to try to excuse the jurors for cause was a matter of trial strategy, and Thomas has not overcome the presumption of sound strategy.

Next, Thomas argues that his lawyer was ineffective for not challenging the prosecutor's notice of intent to offer other acts evidence under MRE 404(b), and for not objecting to the admission of this evidence at trial. However, the record indicates that the notice of intent was filed in June 2015—about three months before trial—and there is no dispute that Thomas's lawyer received it. The notice identified the evidence being offered and the purpose for introducing it, and thus complied with MRE 404(b)(2). In addition, as discussed earlier, the other acts evidence was admissible under MRE 404(b)(1). Accordingly, any challenge to the notice itself, and any objection to the other acts evidence, would have been futile and cannot be the basis for an ineffective assistance challenge. See *Buie (On Remand)*, 298 Mich App at 66.

Thomas additionally asserts that his lawyer was ineffective for failing to present physical evidence that would have completely exonerated him. Thomas does not develop this argument on appeal. He refers only to an exhibit attached to his supplemental brief, which contains Google records for the emails sent through GoodTimes.Jones@gmail.com and the search warrant for Google's records for that account. The exculpatory value of this evidence is not apparent and Thomas fails to explain how it could have exonerated him. Accordingly, Thomas has not met his burden of establishing that his lawyer was ineffective with respect to this evidence.

Thomas also criticizes his lawyer for eliciting from Waschull that Thomas had a history of drunk-driving convictions. Although it is not typical for a defense lawyer to elicit such evidence, the record reflects that Thomas's lawyer did so in this case as part of a larger strategy of showing that Waschull had become obsessed with Thomas and would go to great lengths to harm and embarrass him. Waschull admitted writing articles on his website about details of Thomas's case, as well as Thomas's history of drunk-driving offenses. Waschull also admitted that he had obtained documents relating to the instant case and Thomas's prior cases. Thomas's lawyer questioned Waschull about his efforts to get Thomas in trouble with his probation officer, with the apparent goal of extending Thomas's probationary period. This evidence was critical to

the defense theory that Waschull had a motive to frame Thomas with the charged offenses. Under the circumstances, Thomas has not overcome the presumption that the challenged line of questioning was reasonable trial strategy.

Finally, Thomas also faults his lawyer for not raising a *Brady* violation or objecting to the instances of prosecutorial misconduct. As discussed earlier, there is no merit to Thomas's claim of a *Brady* violation. Thus, his lawyer was not ineffective for failing to raise this issue. *Buie (On Remand)*, 298 Mich App at 66. Further, Thomas was not prejudiced by the improper prosecutor's burden-shifting comment, and Thomas's remaining claims of prosecutorial misconduct are without merit. Accordingly, Thomas's related ineffective assistance claim must also fail.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro