PEOPLE *v.* POTTER.

1. VENUE—CHANGE OF VENUE—SHOWING—SUFFICIENCY.

In a prosecution for arson, the denial of the motion for a change of venue, *held*, justified by the record, there being no sufficient showing of ill feeling or prejudice against defendant.

2. CRIMINAL LAW—ARSON—EVIDENCE—ADMISSIONS.

The admission of testimony by an inspector of the State fire marshal's department, in a prosecution for arson, as to statements made to him by defendant admitting that he had made false entries in his books to make it appear that his loss by the fire was greater than it really was, *held*, not reversible error.

3. SAME—TRIAL—INSTRUCTIONS.

Where there was testimony that the fire was first discovered about 1 o'clock in the morning, an instruction by the trial judge that it was undisputed that the mill was burned about 1 o'clock in the nighttime, *held*, not reversible error, although it was shown that the alarm was turned in at 1:55, the fire chief testifying that he responded at once and when he got there the fire was all through the mill.

4. SAME—TRIAL—ARGUMENT OF COUNSEL.

An assignment of error that the prosecuting officer, in his use of a blackboard in his argument to the jury, upon which figures were placed, used one large item twice, and thereby the jury were misled, is not well taken, said blackboard being used in the presence of defendant and his counsel, and the accuracy of the figures thereon being open to their criticism.

5. SAME—CIRCUMSTANTIAL EVIDENCE—INFERENCES.

Although the evidence was largely circumstantial, *held*, that the inference of guilt therefrom could be fairly drawn.

6. SAME—TRIAL—ARGUMENT OF COUNSEL.

The argument of counsel for the people, when proper allowances are made for the excitement growing out of the trial

and the arguments of opposing counsel, *held*, not reversible error.

7. APPEAL AND ERROR—MISCARRIAGE OF JUSTICE—STATUTES.
   Where a careful reading of the record does not satisfy that the verdict has resulted in a miscarriage of justice, it should not be set aside, under 3 Comp. Laws 1915, § 14565.

Exceptions before judgment from St. Joseph; Knowlen (Frederick W.), J. Submitted January 13, 1921. (Docket No. 125.) Decided March 30, 1921.

Arthur W. Potter was convicted of setting fire to and burning a flour mill. Affirmed.

*George H. Arnold,* for appellant.

*Merlin Wiley,* Attorney General, *Dwight M. Britton,* Prosecuting Attorney, and *Theo. T. Jacobs,* Assistant Prosecuting Attorney, for the people.

MOORE, J. The defendant was convicted of setting fire to and burning a flour mill belonging to the Three Rivers Milling Company which he had leased from that company. The case is here on exceptions before sentence.

Supreme Court Rule No. 40 provides in part:

"The brief of a party bringing a cause into this court shall contain a clear and concise statement of the facts of the case, distinct from argument, and of the errors upon which he relies, the questions involved, and the manner in which they are raised."

See *People* v. *Boyd,* 151 Mich. 577, and *Greenleaf* v. *Lambert,* 192 Mich. 411.

The failure of counsel for the appellant to heed the provisions of the rule has put upon this court a good deal of work it ought not to be required to do.

The case of the people depended almost wholly upon circumstantial evidence. Eighteen witnesses were

sworn on the part of the people. Their testimony fills more than 340 pages of the printed record. No witnesses were sworn on behalf of the defendant. After the verdict of the jury was rendered a motion was made for a new trial. This motion was overruled.

The first assignment of error urged is that the court should have granted a change of venue because of the public feeling existing in St. Joseph county against the defendant.

In stating his reasons for overruling the motion for a rehearing the trial judge said as to this feature of the case:

"No difficulty was experienced in quickly obtaining an apparently competent and unprejudiced jury. Very few jurors had any knowledge of the case, very few had ever heard of the case, except that the term calendar carried the case, and very few had any opinion of any kind in respect to the case. Additional jurors brought in were at the request of the respondent, summoned from townships away from the city of Three Rivers, where the alleged offense was committed. Nothing appeared during the trial indicating or suggesting that there was any merit in the motion for a change of venue."

We think the record fully bears out what was said by the trial judge. We have been unable to learn from it that defendant exhausted his peremptory challenges. This assignment of error has no merit.

Counsel say the court erred in its ruling in admitting some of the testimony of Mr. Armstrong, an inspector in the State fire marshal's department, calling attention to page 262 of the record. It may be well to quote:

"Q. Now tell the jury any other statements, if any, any conversations had with Mr. Potter as to the amount of his loss?

"A. Afterwards when he presented the books, he told what he had done.

"*Q.* What did he say he had done?

"*A.* Made false entries in the books on rye and wheat, corn and different other things, clover seed and timothy seed; I think about fifteen bags of clover and timothy seed, weighed somewhere around 2,400, that he had shipped out the day before the fire, that he had also on his invoice and balanced up his books and came out in round numbers about $12,000, that his actual loss would have been.

"*Q.* I will ask you whether or not he signed a statement to that effect?

"*A.* He did.

"*Q.* Just give the jury the conversation, what was said; I refer now to this last time when he made the statement of $12,000.

"*Mr. Arnold:* If your honor please, I would object to that. It would appear all this was put in a written statement, and the statement is the best evidence.

"*Mr. Jacobs:* Your honor, I do not understand that it appears that it was put in a written statement; what we want to know is what he said at the time.

"*Mr. Arnold:* A written statement was made.

"*The Court:* If it was put into a written statement and signed by Mr. Potter—

"*Mr. Jacobs:* It don't appear that it was in a written statement.

"*The Court:* I don't see why what was said should not be given even if there was a written statement made.

"*Q.* Just tell what was said at that time?

"*A.* He said that he had—he and his wife had added in these extra amounts of wheat and rye and corn, and buckwheat flour, clover and timothy seeds, in order to collect the full amount of his policies, being $25,000.

"*Q.* What, if anything, did he say at that conversation as to the amount of his loss, the actual amount of his loss?

"*A.* He said the actual amount of his loss was about $12,000—what the books showed afterward."

We do not find any reversible error in this ruling. In this connection we think it may be well to quote more of the testimony of this witness:

"*A.* In conversation with Mr. Potter he told me that his cash book, ledger, cancelled checks and check stubs were destroyed in the fire. I told Mr. Potter if all these check stubs, checks, ledger and cash book were destroyed in that fire there would be some evidence left; I told him I was going over there and dig down under the office in the ruins and see what I could find. * * *

"*Q.* What was the conversation then, if any, between you and Mr. Potter?

"*A.* I told Mr. Potter that I had been over to the ruins and dug through the ashes and cinders and found no evidence of any check stubs or books, but I could find everything else. I said: 'Mr. Potter, you are guilty of this crime, and you know it, and I want you to produce every book that you have got, every paper, cancelled check, check stubs or anything that will give us any light on this subject. I want you to go home tonight and I want you to think it over, talk it over with your wife, and tomorrow morning I want you to come down here and bring every book that you have got, paper, cancelled check and check stubs with you.'

"*Q.* Did Mr. Potter make any reply to that statement?

"*A.* He made no reply, he went out of the room and I said goodnight to him. The next morning about 8:30 he came back with a market basket, two folding handles on it, covered over nicely with newspapers, brought it in and set it on the table, and he says: 'There is your books.' We took them out, looked at them, opened up his grain book, and I said: 'Now, just show where you made false entries in the book,' and he turned them over leaf after leaf and showed us where he entered the rye, corn and oats—* * *

"*Q.* Now this conversation you have told the jury about that happened the night before he brought in the market basket full of records, you say he did not answer you when you told him he was guilty?

"*A.* No, he did not say a word.

"*Q.* What did he do, how did he look?

"*A.* Just slid down in his chair this way (illustrating) looking down. * * *

"*Q.* Now, Mr. Armstrong, something was said last night about a kerosene soaked bag that you found in

213—Mich.—20.

the basement, will you tell the jury who was present when you found it?

"A. Mr. Rommell and Mr. Berger.  *  *  *

"Q. Tell where you found the sack?

"A. Found it in the corner of the mill under the cinders and debris.  *  *  *

"Q. What was the character of that debris?

"A. Why, charcoal and grain, sticks and nails, paper and everything that goes with a fire.

"Q. Now just describe to the jury the condition of that sack you found there that day?

"A. Partially burned, saturated with kerosene.

"Q. To what extent was it saturated?

"A. Why, it was wet so that you take hold of it, you could see it on your fingers."

We now quote from the brief of counsel:

"It would have been proper for the court to have charged that 'the undisputed testimony in the case is that the mill was burned and destroyed by fire in the nighttime of the 21st day of January, last'; but the added portion 'that is to say, about 1 o'clock in said nighttime' was a misstatement of the facts, and such a fact as was very prejudicial to respondent.

"The exact minute of receiving the alarm was fixed by the fire chief at 1:55, while it was true that some witnesses without fixing the time simply said some time between 1 and 2 o'clock, and the important feature of this statement of an uncontroverted fact to the jury was that they were given as the law that it was about 1 o'clock and the testimony as to it being about 2 o'clock not to be considered."

This contention overlooks the testimony of the witnesses who first discovered the fire, that it was about 1 o'clock when they discovered it. It also overlooks the testimony of the fire chief that he at once responded to the call, and that when he got to the fire it was all through the mill and was coming out through the upper windows and the roof. We might add that when the judge made this statement counsel for the defendant, who heard it, made no suggestion to the

court that he had made a mistake. This was not reversible error.

In his argument to the jury the prosecuting officer made use of a blackboard upon which figures were placed, which he claimed were justified by the evidence. It is now claimed one large item appeared twice upon the blackboard, and that the jury were misled, and for that reason the case should be reversed. This blackboard was used in the presence of the defendant and his counsel, and the figures appearing thereon were open to the criticism and the argument of counsel as to their accuracy or want of accuracy. We do not think this assignment is well taken.

It is said there was no case made for the people to present to the jury, because the evidence did not show the defendant was connected with the fire. We have already quoted some of the testimony. There was testimony that Mr. Potter ordinarily carried $15,000 of insurance on the contents of the mill. About 60 days before the fire he had taken out a fire insurance policy of $5,000, which expired within a day after the fire; another policy of $5,000, which expired a few days after the fire; it was also shown that at first he made a claim for the loss of $27,000, while he admitted shortly afterwards that his loss was but $12,000. There was testimony from the miller who worked for him that just before the fire large shipments of the contents of the mill had been made, so that there was not a large amount of grain, flour or feed left; that shortly after the fire Mr. Potter cautioned the miller not to say too much to the insurance adjusters.

There was also testimony that Mr. Potter returned to his apartments, Mrs. Potter being away from home, at 12:30 to 1 o'clock a. m. the night of the fire. There were other details of the testimony which it would profit no one to recite, that tended to establish the

guilt of Mr. Potter. We think from the evidence the inference of guilt could be fairly drawn.

The argument of counsel for the people is criticized. Both sides were represented by able counsel who conducted the case with great zeal. When proper allowances are made for the excitement growing out of such a trial, and for the arguments of opposing counsel which are reported at considerable length, we do not think the arguments made in this case can be said to be reversible error.

Act No. 89, Pub. Acts 1915 (3 Comp. Laws 1915, § 14565), reads:

"No judgment or verdict shall be set aside or reversed, or a new trial be granted by any court of this State, in any case, civil or criminal, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for errors as to any matter of pleading or procedure, unless, in the opinion of the court, after an examination of the entire cause it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

A careful reading of this long record does not satisfy us that the verdict should be set aside because it has resulted in a miscarriage of justice. On the contrary we think the evidence fully justified the verdict, and it is affirmed. The case will be remanded to the court below for further proceedings.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.