# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RODNEY SCOT ARMSTRONG, JR.,

        Defendant-Appellant.

UNPUBLISHED
December 14, 2017

No. 332793
Kent Circuit Court
LC No. 14-006822-FH

Before: MARKEY, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of assault with the intent to murder, MCL 750.83; possession of a firearm during the commission of a felony, MCL 750.227b; and felon in possession of a firearm, MCL 750.224f. For the reasons explained in this opinion, we affirm.

## I. BASIC FACTS

Defendant's charges stem from a shooting that occurred near the Buffalo Wild Wings restaurant in downtown Grand Rapids at approximately midnight on the night of June 17 to June 18, 2014. Earlier in the day, a group of teenagers went downtown to hang out at a Swing dance event being held at Rosa Parks Circle. The group of teenagers included Jordan Forbes, Jamond Means, Shadiah McIntosh, Tasia Harris, and Nashay Minter. There was evidence that some of the teenagers fought with others at Rosa Parks Circle.

Although the teenagers repeatedly denied it, there was also evidence that one or more members of their group clashed with defendant at Buffalo Wild Wings at approximately 10:30 p.m. Defendant was beaten and left unconscious on the sidewalk outside the restaurant. Testimony showed that defendant regained consciousness after a few minutes and went into the restaurant to clean up. He refused medical treatment and refused to cooperate with an investigating officer. Defendant's friend, Ngoc Pham, drove him home.

There was cell phone and video evidence supporting the conclusion that, after being dropped home by Pham, defendant drove back downtown. At that time, the teenagers were standing near a parking lot that was adjacent to the restaurant. The evidence indicated that defendant circled in front of the restaurant. He then parked his car, walked down an alley and through the parking lot next to which the teenagers were standing, and fired three shots at them.

-1-

Forbes was struck in the back and suffered a severed spine. Means was shot in the buttocks. Defendant then fled the scene and drove out of the area. The teenaged witnesses identified the shooter as the man who was the victim of the beating earlier in the evening.

At trial, defense counsel asserted that the teenaged witnesses fought with others earlier in the evening and that they were involved in gang activities. In light of these activities, counsel argued that others had a motive to shoot at the teenagers. He further argued that the teenagers were lying to protect each other and only identified defendant as the man who shot Means and Forbes in order to cast themselves in the role of victims. In that way, he maintained, they might prevent police officers from arresting their friends for the attack on defendant. He further stated that the other circumstantial evidence—the cell tower records and video evidence—did not demonstrate that defendant was the shooter. The jury found defendant guilty as charged.

## II. PROSECUTORIAL MISCONDUCT

Defendant first argues that the prosecutor improperly elicited false testimony from the teenaged witnesses and failed to correct the falsehoods. He also maintains that the prosecutor improperly vouched for the teenaged witnesses' identification testimony.

We review de novo a claim that due process was violated. *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). This Court also reviews de novo a claim of prosecutorial misconduct. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). However, because defendant did not preserve these claims, our review is limited to plain error affecting defendant's substantial rights. *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016). In order to establish plain error, defendant must show the occurrence of a clear or obvious error and that the error affected the outcome of the lower court proceeding. *Id.*

"It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). When the prosecutor knows that a witness has testified falsely, the prosecutor has an affirmative duty to correct the testimony. *Smith*, 498 Mich at 475-476. "[I]t is the *effect* of a prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes." *Id.* at 476 (citation and quotation marks omitted). Thus, the focus is on the fairness of the trial and not the culpability of the prosecutor. *Aceval*, 282 Mich App at 390. "A prosecutor's capitalizing on the false testimony, however, is of particular concern because it reinforce[s] the deception of the use of false testimony and thereby contribute[s] to the deprivation of due process." *Smith*, 498 Mich at 476 (citation and quotation marks omitted). "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Aceval*, 282 Mich App at 389 (citation and quotation marks omitted).

Defendant argues that, based on video evidence, it was obvious that Means, Forbes, Harris, McIntosh, and Minter lied about their role in the fights at Rosa Parks Circle and lied about their involvement in the attack on defendant. While there are apparently conflicts between the teenagers' testimony and certain events depicted in the video footage, the video evidence is not definitive proof of everything that occurred on the evening in question and it does not

establish that the teenagers lied about everything that happened that night, particularly those events not captured on video. A prosecutor is under no obligation to disbelieve his or her own witnesses. *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled not in relevant part *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014). As such, the prosecutor could conclude that the witnesses were being truthful on many, if not all, the matters at issue.

To the extent that the video evidence establishes some inaccuracies or some untruths in the teenagers' testimony, it is clear that defendant is not entitled to relief because the jury was made aware of the conflict between the teenagers' testimony and the video evidence and the prosecutor did not rely on the teenagers' purported lies in obtaining a conviction. There is no indication that the prosecutor attempted to keep the video footage from defendant. Cf. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Instead, the video footage in question was played at trial, the teenagers' were examined about the conflicts between their testimony and the video footage, and, when confronted with video footage, Forbes, in particular, acknowledged that he had lied about certain facts. Thus, this is not a case where the jury was left with a false or misleading impression. Cf. *Smith*, 498 Mich at 478. Rather, the jury had all the information necessary to assess the credibility of these witnesses and to determine whether and to what extent the witnesses were being truthful. See *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999) ("[A] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented."). Moreover, it is evident that the prosecutor did not believe the witnesses' implausible testimony about the fights earlier in the evening, and the prosecutor did not attempt to exploit this testimony to obtain a conviction. To the contrary, the prosecutor argued to the jury that the witnesses were not being truthful about those events. The prosecutor told the jury that the evidence showed that the teenaged witnesses had been fighting at Rosa Parks Circle and "almost certainly" participated in the attack on defendant. He argued that the evidence demonstrated that Means and Forbes were "absolutely" involved. On this record, where the jury was apprised of the video evidence and the prosecutor conceded that the teenagers lied about certain facts, there is no reasonable likelihood that any false testimony by the teenagers regarding events at Rosa Parks Circle or the attack on defendant affected the judgment of the jury. Consequently, defendant is not entitled to relief on appeal. See *Aceval*, 282 Mich App at 389.

On appeal, defendant also argues that the prosecutor's remarks amounted to improper vouching for the eyewitnesses. Specifically, defendant asserts that the prosecutor had no way to discern when the witnesses were lying and when they were being truthful. According to defendant, by arguing that the witnesses' identifications were credible even though they had lied about other things, the prosecutor implied that he had special knowledge.

A prosecutor may not vouch for a witness' credibility by implying that he or she has some special knowledge that the witness is telling the truth. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). However, a prosecutor is free to argue from the facts that a witness should be believed. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). In this case, while conceding that the teenagers were not entirely truthful, the prosecutor argued that their description of the shooting and their identification of defendant was worthy of belief. The prosecutor asserted that the eyewitnesses had a motive to lie about their involvement in beating defendant, but that they did not have such a motive when it came to identifying him as the shooter. The prosecutor further emphasized that it was highly implausible that the teenaged

eyewitnesses would conspire to frame defendant. He noted too that an officer confirmed that one of the teenagers identified defendant moments after the shooting, which made it unlikely that her identification was part of a conspiracy to frame defendant. The prosecutor also relied on independent circumstantial evidence that defendant was the shooter. He cited the cell phone and video evidence that tended to show that defendant returned to the area of Buffalo Wild Wings after being beaten by the teenagers, circled the restaurant, parked, and walked to the area of the shooting. This circumstantial evidence bolstered the eyewitnesses' identifications, and the prosecutor could rely on it when arguing credibility. There was also no indication that the prosecutor improperly placed the prestige of his office behind his arguments or claimed special knowledge. See *Bahoda*, 448 Mich at 277 n 26. Thus, the prosecutor did not improperly vouch for their credibility, and defendant is not entitled to relief on this basis.

### III. HEARSAY WITNESS

Defendant next argues that the trial court prevented him from presenting a defense when it precluded a witness, who was present at Rosa Parks Circle during the fighting, from testifying that he heard an unidentified black male threaten to shoot someone.

Constitutional questions are reviewed de novo. *Smith*, 498 Mich at 475. We review a trial court's evidentiary decisions for an abuse of discretion. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). A trial court abuses its discretion when it selects an outcome that is outside the range of reasonable and principled outcomes. *Id.* This Court reviews de novo the proper interpretation and application of the rules of evidence. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). "[I]t is necessarily an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Yost*, 278 Mich App at 353.

Although a defendant has a constitutional right to present a defense, which includes the right to call witnesses, that right is not absolute. *Id.* at 379. The defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* (quotation marks and citations omitted). A trial court does not violate a defendant's constitutional right to present a defense when it properly enforces the rules of evidence. *People v Unger*, 278 Mich App 210, 250-251; 749 NW2d 272 (2008).

At trial, defendant indicated that he intended to call a witness, who was present during the fights at Rosa Parks Circle, to testify that he heard an unidentified "black male" scream: "I'm going to shoot you." There were numerous individuals fighting at Rosa Parks Circle, and there is no indication that the threat was directed toward one of the teenagers involved in this case. Nevertheless, defense counsel argued that the statement was relevant because the threat suggested that someone else might have had a motive to shoot at the teenagers. The prosecutor objected to the admission of this testimony based on hearsay. Defense counsel conceded that the proposed testimony was hearsay, but defense counsel argued that it was admissible as an excited utterance, MRE 803(2), or under the catchall exception provided by MRE 804(b)(7). Citing MRE 403, the trial court excluded the evidence, explaining that any connection between the threat and the events at issue was too speculative and might confuse the jury.

-4-

Hearsay is a statement, other than the one made by the declarant while testifying at trial, that the proponent offers to prove the truth of the matter asserted. MRE 801(c). Defense counsel offered the witness' testimony to prove the truth of the matter asserted: that the unidentified declarant intended to shoot someone. Thus, the statement was inadmissible hearsay unless an exception applied. MRE 801(c); MRE 802. Even assuming that the statement was admissible under an exception to the hearsay rule, the trial court could properly bar its admission under MRE 403, if the "probative value" of the evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In this case, defendant contends that the hearsay statement was relevant to the identity of the shooter insofar as the statement suggested that someone other than defendant had a motive to shoot at the teenagers. However, there were numerous individuals fighting at Rosa Parks Circle, and, when seeking to introduce the statement, defense counsel offered no reason to suppose that the threat by the unidentified declarant was directed at one of the teenagers involved in this case. Absent a basis to reasonably infer that the statement was directed at the teenagers in question, any assertion that the statement demonstrates that someone other than defendant wished to shoot one or all of the teenagers is mere conjecture and speculation. Because this statement's relevance rested on speculative inferences, it had little—if any—probative value. See McCormick on Evidence § 185 (7th ed.) ("[E]vidence lacking in substantial probative value may be condemned as 'speculative.'"). And, the trial court did not abuse its discretion by concluding that the statement's scant probative value was substantially outweighed by the risk that admission of a statement made by an unknown declarant to an unspecified individual would confuse or mislead the jury, particularly where the prosecution could not cross-examine the declarant. Under these circumstances, the trial court's decision to bar the hearsay testimony under MRE 403 fell within the range of reasonable and principled outcomes, *Yost*, 278 Mich App at 353, and the exclusion of this evidence did not deny defendant the right to present a defense, *Unger*, 278 Mich App at 250-251.

IV. COMPILATION VIDEO

Defendant also argues that the prosecutor committed misconduct by showing the jury a compilation video during closing argument. More specifically, he argues that there is a "substantial difference between raw evidence (which was admitted) and evidence which is constructed/created from that raw evidence using unknown methods and/or safeguards." He then argues that the prosecutor could not rely on the newly "created evidence" in his closing argument because to do so involved reliance on evidence that was not admitted at trial. Defendant further suggests that the compilation would not be admissible under MRE 1006.

Defendant's claim is unpreserved because he failed to object to the prosecutor's use of the video during closing. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). This Court reviews de novo on a case-by-case basis whether the prosecutor engaged in conduct that deprived the defendant of a fair trial. *Id*. However, this Court reviews an unpreserved claim of prosecutorial misconduct for plain error affecting substantial rights. *Id.*

-5-

Initially, we note that, although defendant discusses the admissibility of the compilation video, he also concedes that the prosecutor did not seek the admission of the compilation video and that the trial court did not admit it into evidence. Because the compilation video was not admitted, the arguments concerning the compilation's admissibility under MRE 1006 or another rule of evidence are inapposite. Instead, the prosecutor used the video as a visual aid during closing and the issue on appeal is whether this use of a visual aid amounted to misconduct.

"The purpose of closing argument is to allow attorneys to comment on the evidence and to argue their theories of the law to the jury." *People v Finley*, 161 Mich App 1, 9; 410 NW2d 282 (1987). "Closing argument is not the time to introduce new evidence." *Id.* However, during closing arguments, the attorneys may use exhibits, including films, which were properly admitted into evidence at trial. *People v Coddington*, 188 Mich App 584, 603; 470 NW2d 478 (1991); *People v Mundy*, 63 Mich App 606, 608; 234 NW2d 663 (1975). See also *People v Walters*, 223 Mich 676, 680; 194 NW 538 (1923). Depending on the circumstances, attorneys may also use visual aids during closing arguments. *Campbell v Menze Const Co*, 15 Mich App 407, 409-410; 166 NW2d 624 (1968). See also *People v Potter*, 213 Mich 301, 307; 182 NW 144 (1921). However, in making closing arguments, the prosecutor may not argue facts that are not supported by the evidence admitted at trial, nor may the prosecutor mischaracterize the evidence. *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). Accordingly, it would be error for the prosecutor to use a demonstrative aid that did not represent the evidence actually admitted at trial, that amounted to a mischaracterization of the evidence, or that amounted to other improper argument.

In his closing argument, the prosecutor summarized the testimony by a detective wherein the detective described the videos that the police collected from various locations in the area of the shooting. The prosecutor asked the jury to "watch the video, or all the videos combined into a compilation which shows the defendant's movements." That is, the prosecutor represented that the compilation was a video that combined the videos actually admitted into evidence and about which the detective testified. The prosecutor then played the compilation for the jury. The compilation video consists of various snippets of footage taken from cameras at various locations in the time around the shooting.[1] The individual segments are separated by the appearance of a blue screen with written text identifying the camera location for the footage that will appear next. At points, the video pauses and objects or persons in the video—such as a vehicle with a missing hubcap or a man wearing white socks—are highlighted by the appearance of a light circle. At trial, during the playback, the prosecutor pointed out how, when viewed in the selected order, the videos admitted into evidence showed the car associated with defendant moving through the area near the time of the shooting and showed that it stopped at a nearby location that enabled the driver to approach the teenaged victims. He noted that the videos appeared to show the driver, who was wearing clothing consistent with the eyewitnesses' testimony, approach the scene of the shooting at around the time of the shooting, and then flee from the scene afterward. Thus, the record shows that the prosecutor used the compilation video as a demonstrative aid as part of the prosecutor's argument about how the jury should view the videos admitted into evidence.

---

[1] Defendant has provided the compilation video on appeal, and we have reviewed it.

Defendant maintains that it was error for the prosecutor to use the compilation because the compilation amounted to new evidence created by the prosecutor and thus the use of the compilation amounted to an argument based on evidence not admitted at trial. Specifically, he argues that the compiled video presented a "compelling version of events that was not obvious from the evidence admitted at trial" and that it "was slanted towards the prosecution's view of events." However, defendant does not argue that the prosecutor used videos segments in the compilation that were not actually admitted at trial. He merely states that the prosecutor assembled the videos in a compelling sequence—that is, he essentially faults the prosecutor for making a convincing argument. But, the prosecutor was free to argue the evidence and the reasonable inferences from the evidence in support of his theory of the case. *Bahoda*, 448 Mich at 282. In assembling the videos in a particular order and highlighting certain images, the prosecutor did not offer new evidence, nor did the prosecutor distort the video images that had been admitted into evidence. Instead, the prosecutor simply used admitted video evidence during closing arguments as a demonstrative aid. We see nothing improper in the prosecutor's use of a demonstrative aid during closing arguments, and defendant has not shown plain error. See *Bennett*, 290 Mich App at 475.

Moreover, even if we were to conclude that the prosecutor should not have used the compilation video, defendant has not shown that the error affected his substantial rights. There is no indication the actual videos admitted at trial were unavailable for the jury's review during deliberations, and defense counsel had the opportunity to react to the compiled video and to argue that the jury should not view the video evidence in the manner suggested by the prosecutor. Further, the trial court instructed the jury that the parties' closing arguments were not evidence; the evidence, it told the jury, was the sworn testimony and the exhibits admitted at trial. Jurors are presumed to follow their instructions, and the trial court's instruction cured any minimal prejudice. *Unger*, 278 Mich App at 235. Thus, defendant has not shown that the prosecutor committed outcome determinative error by using the compiled video as a demonstrative aid during closing argument.

## V. CUMULATIVE ERROR

Finally, defendant argues that, even if the errors he identified on appeal do not individually warrant relief, the cumulative prejudice of the errors would warrant a new trial. However, defendant has not identified any actual errors, and thus there is no cumulative effect of errors that would warrant relief. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

Affirmed.

/s/ Jane E. Markey
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause